John W. Welch v. Gray Moss Bondholders Corporation, et al.

175 So. 529.
Opinion Filed June 28, 1937.

*Guss Wilder,* for Appellant;

*McMullen, McMullen & Pogue* and *Austin L. Richardson,* for Appellees.

BUFORD, J.—The appeal in this case is from final decree in favor of an intervenor, Rhoda M. Appleyard. The pertinent parts of the decree are as follows:

"IT IS THEREUPON, ORDERED, ADJUDGED AND DECREED that the plaintiff, Gray Moss Bondholders Corporation, be, and is hereby directed to immediately execute and deliver to Rhoda M. Appleyard a sufficient deed of conveyance of the properties described in the bill of complaint upon receipt from Rhoda M. Appleyard of the sum of Twenty ($20,000)

Thousand Dollars and the assumption of a certain mortgage executed to the Jefferson Standard Life Insurance Company of Greensboro, N. C., in the amount of Fifteen ($15,000) Thousand Dollars;

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the defendant, John W. Welch, has not exercised his option to purchase the premises described in the bill of complaint in accordance with the terms and conditions of the lease agreement between him and the plaintiff corporation; that the said lease be and is hereby cancelled;

"IT IS FURTHER ORDERED that the Receiver, Glenn Brooks, heretofore appointed in this cause, be and he is hereby directed to immediately take possession and charge of the property, and the defendant, John W. Welch, is ordered to deliver immediately the possession of said property to said receiver. The receiver shall continue in possession of said property until the further order of the court."

The appellee, Gray Moss Bondholders Corporation, filed a bill of complaint in which it alleged that it was the owner of certain described land. It alleged that a certain lease was made and executed between the complainant and the defendant, John W. Welch. Copy of the lease was attached to the bill of complaint. The lease in part provided:

"THE LESSOR HEREBY GIVES AND GRANTS unto the LESSEE the right, privilege and option to purchase the demised premises, free and clear of encumbrances, for cash or upon terms acceptable to the LESSOR, as follows:

"1st: On or before the 1st day of July, 1935, $42,500.00;

"2nd: Between July 1st, 1936 and July 1st, 1937, $45,000.00;

"3rd: Between July 1st, 1937, and July 1st, 1938, $47,500.00; and in the event of the renewal or extension of this lease, as hereinafter provided, then

"1st: Between July 1st, 1938, and July 1st, 1939, $50,-000.00;

"2nd: Between July 1st, 1939, and July 1st, 1940, $52,-500.00;

## "VI.

"It is Hereby Mutually Covenanted, Understood and Agreed between the Lessor and Lessee that the Lessor may sell the demised premises to any third party during the term hereof, but upon the following conditions:

"1. That upon receipt of any *bona fide* offer which may be acceptable to the Lessor, the Lessee shall have thirty (30) days from the written notice of such offer within which to purchase said property at the price offered, if less than the option price for the particular year, as hereinbefore set forth, or at said option price in the event said offer be in excess thereof.

"2. Should the Lessee fail to exercise his option to so purchase said property, and the property be sold to a third party, then, in the event the Lessee be required to surrender possession of the premises during the winter tourist season, which is hereby agreed to be the period from November 1st of any year to May 1st of the succeeding year, the Lessor shall refund to the Lessee the unearned portion of any advance payments of rent as hereinafter provided in paragraph XII, and shall pay said Lessee 5% of the sale price of the property as liquidated damages for the termination of this lease and the surrender of possession of the premises. Should such delivery of possession be required during the summer season, which is hereby agreed to be the period from May 1st to November 1st of any year, then the Lessor shall refund to the Lessee the unearned portion of any advance payments of rent as above provided, and shall pay the Lessee the sum of $500.00 as such liquidated damages;

"PROVIDED, HOWEVER, that if said premises be not so sold prior to the 1st day of November, 1935, then said property shall not be thereafter offered for sale until after the 1st day of February, 1936."

The bill of complaint then alleged:

"The plaintiff further shows that on October 21st, 1935, it received an offer from J. E. Young, as Agent, to purchase the within described property for the sum of Forty Thousand ($40,000.00) Dollars, a copy of which· is attached hereto, made a part hereof, and marked Exhibit 'B,' which offer was duly accepted by the Gray Moss Bondholders Corporation. That on October 25, 1935, the Gray Moss Bondholders Corporation notified the defendant, John W. Welch, of said offer in compliance with the provision of the lease, a copy of which is attached hereto, and gave the defendant, John W. Welch, opportunity to purchase the said property at the said price of Forty Thousand ($40,000.00) Dollars, in accordance with the provisions of said lease, copy of which notice is attached hereto, made a part hereof and marked Exhibit 'C.'

"5. The plaintiff would further show unto the Court that the said property hereinbefore described consists of a hotel of ____ rooms and store spaces and would further show unto the Court that the business of the said hotel is almost entirely a tourist business during what is commonly known in Florida as the tourist season, which is designated in said lease hereinbefore referred to as being during the months of November, December, January, February, March and April.

"6. The plaintiff would further show that the defendant, John W. Welch, has failed and refused to purchase the said described property in accordance with the provisions of the said lease, and upon his failure to purchase the said property within the thirty days from the date of the said

written notice the plaintiff did sell the said property to the said J. E. Young, as Trustee.

"7. Plaintiff further shows that on November 30th, 1935, the plaintiff, the Gray Moss Bondholders Corporation did give further notice to the defendant requiring that if he desired to exercise his right under the lease to purchase the said property that he do so on or before December 2nd, 1935, at 2:00 P. M., and was requested to get in touch with Mr. A. R. Hart, Secretary and Treasurer of the plaintiff company at its office in St. Petersburg, Florida, and was notified upon his failure to purchase the property or exercise his option as provided under the terms of the said lease to surrender possession of the property immediately, copy of which notice is attached hereto, made a part hereof and marked Exhibit 'D,' and that on December 20th the said plaintiff corporation did make a second written demand upon the defendant, John W. Welch, for possession and did tender and offer to pay as a refund and as stipulated amount for liquidated damages under the provisions of the lease, the sum of Thirty-eight Hundred ($3,800.00) Dollars, but that the said John W. Welch, the defendant, did and still refuses to deliver possession of the said property to the plaintiff and to accept the said tender of Thirty-eight Hundred ($3,800.00) Dollars, and did on the 20th day of December, 1935, state to A. R. Hart, Secretary and Treasurer of the plaintiff corporation, that he was not and did not intend to exercise his option to purchase the said property as provided in paragraph six of the said lease."

The bill then alleged that the complainant could not consummate the sale to Young as Trustee until possession of the property could be delivered and that unless same was delivered Young would repudiate his obligation to purchase; that complainant was entitled to the possession of the property under the terms of the lease; that as a part of the con-

sideration for the lease the defendant agreed to pay the taxes, real and personal, asssesed against said property, before February 1st, 1936, and that the defendant had failed to pay the same; that the defendant is insolvent.

It then alleged:

"The plaintiff further avers that it is the custom and practice of many of the guests of a hotel of this character to pay in advance, in some instances, covering the full season and avers the fact to be that unless a Receiver is appointed to take possession of the said property and operate and manage the same and preserve the income of the same and preserve the good will of the hotel with its guests that the defendant can and will appropriate to his own use the entire income from the said property without accounting for the same and cause the plaintiff to suffer irreparable injury and damage.

"13. And the plaintiff avers that upon such accounting being had, he is ready, able and willing to make payment in cash to the defendant of such amounts as may be found due and payable to him and the refund or stipulated liquidated damages resulting from the sale of said property in accordance with the terms and conditions of said lease.

"14. The plaintiff further avers that under paragraph 9 of the said lease the Lessee did covenant and agree to pay all costs and reasonable attorney's fees in case it should become necessary for the Lessor to bring any action for the enforcement of any covenant, condition or provision of the lease. And the plaintiff further avers that it has become necessary for it to employ Austin L. Richardson, as attorney, and that it has contracted with him to pay him a reasonable fee such as may be determined and fixed by the Court."

The prayer of the bill was in effect that defendant Welch be required to answer, not under oath; that the court appoint a Receiver *pendente lite;* that an accounting be taken

between the parties; that the court allow plaintiff a reasonable time in which to pay the amount due the defendant as refund as liquidated damages found to be due upon accounting; that the lease be cancelled and defendant be required and directed to deliver possession of the property to plaintiff, and for such other relief as might be found proper.

The letter of October 15th, referred to in the bill of complaint, is in the following language:

"John W. Welch,

"Clearwater, Fla.

"Dear Sir:

"In compliance with the provisions of that certain lease dated June 21, 1935, and held by you covering what is known as the Gray Moss Inn, you are hereby notified that the Gray Moss Bondholders Corporation has today received a *bona fide* offer to purchase said property for Forty Thousand ($40,000.00) Dollars, payable as follows: Twenty-five Thousand ($25,000.00) Dollars cash, and the assumption of the Fifteen Thousand ($15,000.00) Dollar mortgage now against said property and held by the Jefferson Standard Life Insurance Company of Greensboro, North Carolina, the purchaser to assume all 1935 taxes.

"Under the terms of your lease, you have thirty (30) days from this date within which to exercise your option to purchase said property at the price and on the terms and conditions above set forth.

"Should you fail to exercise your option to purchase the said property within thirty (30) days from date hereof the above offer will be accepted, possession of the said real estate will be required, and it will be necessary for you to surrender the same as provided by the terms of said lease.

"Yours very truly,

"GRAY MOSS BONDHOLDERS CORPORATION,

"By ......................................................................,

"President."

By letter of November 30th, referred to, the complainant gave notice to the defendant as follows:

"This is to notify that upon your failure to exercise the option contained in your lease covering the property known as the Gray Moss Inn located in Clearwater, Florida, on or before Monday, December 2, 1935, at 2 P. M., the sale of the said property will be made to John Young, as Agent, who has offered to buy the said property. Mr. Young's offer was made sometime ago and on the 21st day of October, 1935, you were given the thirty (30) days' notice within which to exercise your option and to meet this offer of Mr. Young's to purchase this said property.

"Should you desire to exercise your option, you are notified to get in touch with Mr. A. R. Hart, Secretary-Treasurer of the Gray Moss Bondholders Corporation, at No. 5 Seventh Street North, St. Petersburg, Florida, on or before 2 P. M. December 2, 1935.

"In accordance with the provisions of your lease, upon the failure of you to exercise your option and upon the payment to you of the refund and amount provided to be paid you under the said lease you will be required to surrender possession immediately."

Motion to dismiss was filed and denied. There was no error in denying this motion.

Thereupon answer was filed. The answer averred:

"2. Answering paragraph 4, this defendant is without knowledge as to whether the plaintiff received an offer from Young to purchase said premises as alleged in said paragraph 4 or otherwise, but this defendant admits having received from the plaintiff a letter substantially the same as Exhibit 'C' attached to said bill and says that on November 23, 1935, this defendant exercised his option to purchase the premises and furnishings in question, and on said date so notified the plaintiff by letter, copy of which follows:

"November 23, 1935.

"Gray Moss Inn Bondholders Corporation,

"St. Petersburg, Florida.

"Gentlemen:

"Pursuant to my lease on June 21, 1935, and your notice of October 25, 1935, to me relative to it, I hereby exercise my option to purchase the Gray Moss Inn at the price and on the terms as set forth and agreed upon between us.

"Very truly yours.

"And thereupon requested the plaintiff to deliver to his attorney the abstract of title for examination, which the plaintiff refused, and still refuses to do, and this defendant stands ready, able and willing to pay the purchase price as agreed upon between the parties to said lease as therein set forth upon delivery to his attorney of abstract of title certified to date showing good and marketable record title, free from all encumbrances as agreed upon between the parties. This defendant admits the allegations of paragraph 5 in so far as they are intelligible."

The defendant denied the allegations of paragraph 6 of the bill.

The answer then alleged:

"Answering paragraph 7, this defendant admits having received a letter substantially the same as set forth in Exhibit 'D' attached to the bill, to which letter this defendant on December 2, 1935, wired the plaintiff's president, Paul Poynter, as follows: 'I have exercised my option in writing according to my contract and my attorney waits for abstracts.' Further answering said paragraph, this defendant denies having received a demand for possession of said premises and denies that any tender of money was made to him, but alleges that said plaintiff is not entitled to possession and if such demand had been made it would have

been declined by this defendant. Further answering said paragraph, this defendant denies that he ever stated to A. R. Hart, or to anyone else, that he was not exercising and did not intend to exercise his option to purchase said property as provided in paragraph 6 of said lease, or as provided in paragraph 5 thereof, or otherwise.

"5. Answering paragraph 8, this defendant says that he himself is entitled to purchase the premises and Young is not entitled thereto and this defendant is without knowledge as to whether his being in possession of said premises or his alleged refusal to deliver possession thereof to the plaintiff will have any effect upon the alleged sale to Young."

The answer then denied that complainant was entitled to possession of the property on December 2nd, or at any other time since delivery of the lease. The answer alleged that defendant had obligated to pay the taxes assessed against the property before February 15th instead of February 1st, 1936. The answer denied paragraph 11 of the bill. The answer then alleged:

"9. Answering paragraph 12 this defendant says that the guests in the hotel are largely there through his own personal pre-season work and individual solicitation, and that he operated the hotel very successfully last year and is now operating at a substantial increase in guests over the number he had last year, and it is largely his personal following, he having been in the hotel business before. This defendant further says that these conditions are known to Paul Poynter, who is the president of the plaintiff and one of the chief stockholders and is, as this defendant is informed and believes, the real purchaser along with one Rhoda M. Appleyard, and that these two, and especially Mrs. Appleyard, are seeking to oust this defendant unlawfully and if they cannot do that then to injure his business this growing out of an old grudge, which the said Mrs. Appleyard, the

sister-in-law of the defendant, has held against him for about a year. This defendant admits that some guests pay weekly in advance, but denies that any pay longer in advance, and also denies the right of the plaintiff to possession or participation in the funds and alleges that the plaintiff's act in instituting this suit has injured this defendant's business and will injure it by disturbing the guests and creating dissatisfaction and uncertainty among them.

"10. Answering paragraph 13 and 14, this defendant denies the allegations therein contained and denies that there was any occasion for the institution of this suit or any ground for it existing either equitably, legally or morally, and denies the right of the plaintiff to maintain the suit or to receive any attorney's fees at the expense of this defendant.

"This defendant further says that said lease attached to the bill as Exhibit 'A' was prepared entirely by the plaintiff and not by the defendant."

The answer then alleged that plaintiff had done all that he was required to do to be entitled to a deed. The answer prayed that Paul Poynter and Rhoda M. Appleyard, a widow, both of St. Petersburg, Florida, be made parties to the suit and reply to the answer.

A Receiver was appointed to take charge of the property. If the final decree should be otherwise sustained the propriety of the appointment of the receiver is no longer material and, therefore, a reversal of the order appointing the Receiver could accomplish nothing beneficial to the defendant, the appellant here.

On December 30, 1935, stipulation of counsel was entered into and filed with the Clerk of the Court and recorded on January 18, 1936, in Chancery Book 131, page 333. The stipulation was as follows:

"By way of comprising the above styled suit, it is hereby stipulated between the plaintiff and the defendant, with the approval of the receiver and the court, that the defendant be permitted, authorized and directed to carry out his option to buy and he hereby agrees to carry out his option to buy the Gray Moss Inn Property and furniture and furnishings in litigation in the above styled cause for $38,975.00. Cash $23,975.00, subject to 1935 taxes and has paid and has delivered to the receiver a cashier's check for $5,000.00 payable to the order of Glenn Brooks as Receiver of the property involved in the above styled suit and the plaintiff shall furnish with all convenient speed abstract of title certified to date showing good and marketable title of record in the plaintiff, free from all encumbrances except Jefferson Standard Mtg. and joined by the receiver shall convey the same by full warranty deed in the usual form to the order of the defendant and the defendant will at the same time pay the balance of the consideration of $18,975.00. The defendant shall be allowed 13 days from receipt of the abstract in which to examine it and close the deal and shall forfeit as its liquidated damages the $5,000.00 should he fail to close it 13 days after having been furnished with such abstract. Meantime the receiver's only connection with the property shall be lmited to a mere technical possession. The suit shall thereupon be dismissed at the cost of the plaintiff and without any costs of any nature being charged against or assessed against the defendant or the property involved.

"It is further stipulated that the defendant waives all claims set forth in his answer or in his contract of lease and the parties hereto, by the consummation of this agreement, shall be mutually released from all obligations growing out of the lease or connected with it or with the property or

alleged cause of action or cross-suit in the above styled cause, this December 30, 1935.

"Should the defendant decline to accept title as reflected by the abstract the receiver may return the $5,000.00 paid and this stipulation shall become void and of no effect."

On January 8, 1936, the cross-defendant, Mrs. Appleyard, filed answer and counter claim in which she averred:

"Answering paragraph two, this cross-defendant says that the plaintiff in truth and in fact did, on October 21st, 1935, receive an offer from J. E. Young as agent of this cross-defendant, to purchase the property described in the bill of complaint for Forty Thousand ($40,000.00) Dollars; that said offer was duly accepted by the plaintiff in this cause; that thereafter on October 25th, 1935, the Gray Moss Bondholders Corporation notified the defendant, John W. Welch, of said offer in compliance with the provisions of the lease described in the bill of complaint; that said plaintiff gave the defendant John W. Welch an opportunity to exercise his option in accordance with the terms of said lease as set forth in paragraph four of the bill of complaint; your cross-defendant further alleges that the defendant John W. Welch failed and neglected to exercise his option in accordance with the provision of said lease by purchasing the property in the manner required by said lease; your cross-defendant would further show that in accordance with the terms of said lease it was not necessary for the plaintiff to deliver an abstract of title for examination and alleges that it was necessary for the defendant John W. Welch to complete the purchase of said property by paying for same within thirty (30) days after the notification of sale had been received by him."

She admitted that the matters and things set forth in paragraph 6 of the bill of complaint were true and alleged

that Young as Trustee was acting as trustee for this cross-defendant. She averred:

"As to paragraph four, this cross-defendant avers that the matters and things set forth in said paragraph constitute a legal exercise of the option contained in the lease to purchase the property described in the bill of complaint.

"5. As to paragraph five, this cross-defendant denies that the defendant John W. Welch is entitled to purchase the premises described in the bill of complaint.

"6. As to paragraph nine, this cross-defendant avers that she is not seeking to unlawfully oust the defendant John W. Welch; but avers the true facts to be that she submitted a *bona fide* legitimate offer through her agent, J. E. Young, to the plaintiff to purchase the property as alleged in the bill of complaint; that thereafter the defendant John W. Welch failed and neglected to exercise his option; that she has delivered through her agent to the plaintiff the sum of Five Thousand ($5,000.00) Dollars as earnest money and as down payment upon the property described in the bill of complaint; that she is ready and willing and able to complete the payments in accordance with her agreement; that she will complete said transaction and will pay the remaining part of the purchase price upon receipt of a good and sufficient fee simple deed from the plaintiff corporation to this cross-defendant. Cross-defendant further avers that the plaintiff corporation have made, executed and delivered to her trustee, John E. Young, a binding contract of purchase and sale based upon a valuable consideration; a true copy of said contract is hereto attached and is by reference made a part hereof and is marked Cross-Defendant's Exhibit 'A.' Your cross-defendant therefore avers that she has made a legal and binding offer of purchase and sale, that the same has been accepted by the plaintiff, that the defendant John W. Welch has failed and neglected to ex-

ercise his option to purchase, that she is entitled to a deed to the premises from the plaintiff."

Mrs. Appleyard filed a cross-bill. She made all the matters and things alleged in the original bill of complaint part of her cross-bill, the same as if set out in full. She made all the matters and things set forth in her answer a part of her cross-bill as if set out in full. She alleged that the complainant holds the sum of $5,000.00 in money belonging to her and that the same has not been returned by reason of the conditions alleged in her answer and in the bill of complaint and that she is entitled to a conveyance of the premises described in the bill of complaint. Other allegations of the cross-bill are not material to the disposition of the case.

So the question ultimately presented to the Chancellor, and which is presented to us, was whether under the existing conditions the defendant Welch had exercised the option contained in the lease in such manner as to bind the complainant to convey the property to him or had failed to so exercise that option and thereby forfeited his right under the option to acquire ttile to the property thereby leaving the complainant free to sell and convey the property to Young as Agent for Mrs. Appleyard, or had complainant and defendant entered into such a binding agreement as a compromise concerning the respective rights of each as would entitle Welch to have conveyance of the property on complying with the terms of such agreement.

The offer from Young to purchase the property was made on October 21st, 1935. The letter to Welch advising him of the offer and giving him thirty days from that date within which to exercise his option to purchase was dated October 25th, 1935.

Our conclusion is that as between Gray Moss Bondholders Corporation and Welch the stipulation of December 30th, 1936, hereinbefore quoted, which was approved by

the court, was binding and conclusive and that regardless of Mrs. Appleyard's answer, counter claim and cross-bill, Gray Moss Bondholders Corporation was bound by the stipulation and agreement to convey the property to Welch and was liable in a suit at law to Mrs. Appleyard for any damage which she may have sustained, if any, by reason of, or as a result of, negotiations with her agent and trustee with reference to the purchase of the property.

In Florida Yacht Club v. Renfroe, 67 Fla. 154, 64 Sou. 742, it was held:

"A contract of lease containing an option on the part of the lessee to purchase land upon acceptance of the option becomes a binding contract between the parties, and implies that a good title shall be made."

In Orlando Realty Board Bldg. Corporation v. Hippert, et al., 93 Fla. 954, 115 Sou. 100, it was held:

"When an option to buy land is definitely accepted, it ceases to be an option and ripens into a mutually binding and enforceable contract the terms of which are identical with those contained in the option."

See also Skipper v. Handley, 98 Fla. 1253, 121 Sou. 792; Berhman v. Max, 102 Fla. 1094, 137 Sou. 120.

"The general rule is that stipulations voluntarily entered into between the parties. to a cause, or their attorneys for the government of their conduct and the control of their rights during the trial or progress of the cause will be respected and enforced by the courts where such stipulations are not contrary to good morals and sound public policy." Smith v. Smith, 90 Fla. 824, 107 Sou. 257. See also Penney v. First Trust & Savings Bank, 102 Fla. 185, 135 Sou. 805; Esch v. Forster, 123 Fla. 905, 168 Sou. 229, and cases there cited. In the latter case it was held:

"In absence of grounds authorizing party to stipulation to rescind or withdraw from stipulation, trial court and ap-

pellate court are bound by stipulation in respect of matter which may validly be made subject matter thereof."

In Federal Bond & Mortgage Co. v. Gruner, 125 Fla. 225, 169 Sou. 649, the holding was to like effect. See also 60 C. J. 46.

Whether the stipulation be considered as having the force and effect of order of court, or as having the effect of a supplemental agreement between the parties, can be of but little consequence because of the rule which was enunciated in the case of Skipper v. Handley, *supra,* in which we said:

"Where, after option to buy land merged into contract for purchase and sale by acceptance of option provisions and payment of required sum of money by vendee to vendor, a supplemental agreement was entered into whereby terms of original contract were modified, by which feature time as of essence of contract was eliminated, *held,* that parties were bound by a contract of purchase and sale of which time was not essence and under which vendee had been put into possession of property by vendor."

The contract of purchase entered into on the 19th day of December, 1935, between Gray Moss Bondholders Corporation, a Florida corporation, and John Young as Trustee, and, as the record shows, as Trustee for Mrs. Appleyard, contains the following paragraph:

"It is further agreed by and between the parties hereto that the party of the second part shall take the necessary legal proceedings to obtain possession of the said described property, now being held by one John W. Welch under a certain lease dated June 21, 1935, and that should the said party of the second part fail to obtain possession of the said property or to have a Receiver appointed for said property pending the legal proceedings within a period of 15 days from date hereof the party of the first part shall at his option declare the within contract null and void and the

said Five Thousand ($5,000.00) Dollars paid herewith shall be returned to the said party of the first part."

So, it appears that Young, as Agent and Trustee for Mrs. Appleyard, took the contract to purchase with notice that Welch was in possession of the property claiming same under such rights as he might have according to the provisions of the lease under which he held possession and, therefore, Young and his principal were at least put upon inquiry as to what Welch claimed his rights to be. At that time Welch had already given the owner notice of his acceptance of the option to buy contained in the lease. Being so put on inquiry, Mr. Young and Mrs. Appleyard were charged with constructive notice of all rights claimed by Welch and took the contract to purchase subject to whatever rights Welch might have under his contract and subject to whatever settlement might be made between Welch and the owner concerning Welch's rights under that contract.

Under the facts and conditions as disclosed by the record the counter claim of Mrs. Appleyard should have been dismissed without prejudice to whatever rights she might have as against Gray Moss Bondholders Corporation, and a decree should have been entered cancelling the purported deed from Gray Moss Bondholders Corporation to Mrs. Appleyard and requiring Gray Moss Bondholders Corporation and Welch to comply with the covenants assumed by each respectively, according to the terms of the stipulation made, filed and approved by the court on December 30, 1935, and recorded January 18, 1936, in Chancery Order Book 131, page 333. The result is that the decree must be reversed and, therefore, we revert to the question as to whether or not the court committed reversible error in appointing a Receiver. The appointment of a Receiver in litigation is to a great extent a matter within the sound judicial discretion of the Chancellor to be exercised, or withheld, ac-

cording to the circumstances and facts of each particular case. If that discretion is exercised whimsically, or if it is clearly arbitrary, unreasonable or unjust, amounting to an abuse of such discretion, the order appointing Receiver may be set aside on appeal. See Mirror Lake Co. v. Kirk Securities Corporation, 98 Fla. 946, 124 Sou. 719; Apalachicola Northern R. Co. v. Summers, 79 Fla. 816, 85 Sou. 361; Lehman, et al., v. Trust Co. of America, 57 Fla. 473, 49 Sou. 502; Carolina Portland Cement Co. v. Baumgartner, 99 Fla. 987, 128 Sou. 241; Therrell v. State Life Ins. Co., 107 Fla. 450, 144 Sou. 668 and 145 Sou. 220.

In this case the showing made for the appointment of Receiver was not as full and complete as might have been required, but the stipulation hereinabove referred to acquiesced in the appointment of the Receiver theretofore made and stipulated for the continuation of a limited Receivership thereafter. Therefore, we must hold that there was no reversible error in the order appointing Receiver.

For the reasons hereinbefore set forth, the final decree is reversed with directions that the cause be remanded and a decree be entered not inconsistent with the views herein expressed.

So ordered.

ELLIS, C. J., and TERRELL and BROWN, J. J., concur.

Mr. Justice DAVIS indicated his dissent from the foregoing opinion.