Certiorari proceeding by McAllister Hotel, Inc., a Florida corporation, and others, against Frances Schatzberg and Rita Fineberg, for and on behalf of themselves and on behalf of all other persons similarly situated, and others, to review an order of the chancellor appointing a receiver pendente lite of the McAllister Hotel, Inc., and enjoining petitioners from interfering with the properties, assets, etc., of the hotel and from interfering with the receiver.
Petition granted, and order complained of quashed.
A petition for writ of certiorari directed to an order of the Chancellor below wherein and whereby said Chancellor appointed a Receiver pendente lite of the McAllister Hotel, Inc., a Florida corporation, and of its properties and assets of every kind and nature, is before us for consideration. The order, about which complaint is made, also enjoined the petitioners (defendants below) from interfering with the properties, assets, business or affairs of the McAllister Hotel, Inc., and from interfering with the Receiver in his possession of such properties and assets or in his management of such business and affairs. *Page 202 
It is not deemed necessary to take the time or space required for a detailed summary of the allegations of the bill of complaint or of the evidence.
A word picture, as epitomical as can be painted, of the relevant facts follows: Herman Schatzberg secured an option to acquire all of the stock of the New McAllister Hotel Corporation, which corporation owned the McAllister Hotel in Miami. He paid the sum of $50,000 for said option. Shortly before its expiration date negotiations were begun between Schatzberg and J. Meyer Schine to the end that Schine would furnish the money needed (which Schatzberg did not have) to exercise Schatzberg's option and the two men would form a new corporation to be known as McAllister Hotel, Inc. Each would own fifty per cent of the stock of said corporation. Schine's stock was to be Class A (voting stock) and Schatzberg was to have Class B (non-voting stock). The $50,000 paid by Schatzberg was to be, and was, repaid to him out of the money ($1,300,00) furnished by Schine (actually advanced by Schine Chain Theatres, Inc., which corporation owns the Class A stock) for the completion of the deal. Schatzberg was to pay $1,000 into the new McAllister Hotel, Inc., and Schine was to advance a similar amount. A loan of $1,000,000 was to be secured after formation of the McAllister Hotel, Inc., and consummation of the purchase of the stock of the New McAllister Hotel Corporation which was to be and was turned over to Schine on account of the advance of $1,300,000. The foregoing arrangements were subsequently effectuated. Schine then had an actual cash investment of $300,000 and Schatzberg had cash of $1,000, and his option, in the project. The actual value of the option was exceedingly speculative since Schatzberg's ability to dispose of it or find someone financially able to exercise it was the only criterion of its worth.
For the purpose of considering the present status of the case, it must be borne in mind that the original parties plaintiff, Frances Schatzberg and Rita Fineberg, are respectively the wife and daughter of Herman Schatzberg, plaintiff by intervention. Herman Schatzberg is also the father of Lucile Klinghoffer and Robert Schatzberg. These children are intervening plaintiffs and are represented by Herman Schatzberg as Trustee.
Mrs. Schatzberg, as well as each child, received her shares of stock in the McAllister Hotel, Inc., gratuitously from Herman Schatzberg. They cannot claim to be innocent purchasers for a valuable consideration without notice of those matters about which they complain which were known to Herman Schatzberg prior to his gift to them, or for that matter, subsequently thereto, for under existing circumstances, he was their agent and his knowledge is imputed to them. Fletcher, Cyclopedia of Corporations, Vol. 13, Section 5711. The petitioners "participated personally or by proxy" in actions which allegedly brought about the inequities which they now bewail. Apalachicola Northern R. Co. v. Sommers et al., 79 Fla. 816, 85 So. 361. Schatzberg was a director in McAllister Hotel, Inc., and approved and signed the minutes of meetings of the Board when the Hildemart contract was approved; when it was agreed to accept $125,000 for the claim against the United States Navy and when advances from Schine Chain Theatres, Inc., to McAllister Hotel, Inc., amounting to over $700,000 were approved and it was resolved that the policies of the corporation with respect to operations should be continued. Frances Schatzberg and Rita Fineberg had actual knowledge of most of the matters with which they now find fault.
We find that the real question to be determined is: Was it necessary for the Chancellor to exercise his power of appointment of a Receiver in order to protect the rights of respondents as they are alleged and as ultimately they may be established? So we may well inquire whether the invocation of any equitable processes short of receivership would have accorded adequate protection to the respondents. It is observed that there is absence of allegation, or showing, of insolvency on the part of any one or more of the petitioners. This Court has repeatedly asserted that the power of appointment of a Receiver is a delicate one and *Page 203 
should be exercised only in those cases where the exigencies demand it and no other protection to the applicants can be devised by the Court. Tampa Water Works Co. v. Woods, 97 Fla. 493, 121 So. 789; Mirror Lake Co. v. Kirk Securities Co., 98 Fla. 496, 124 So. 719; Apalachicola Northern R. Co. v. Sommers,79 Fla. 816, 85 So. 361; Lehman v. Trust Co., 57 Fla. 473, 49 So. 502; 19 C.J.S., Corporations, § 1454, page 1158. The Chancellor should be exceedingly cautious where, as here, there is no suggestion of insolvency of any of the defendants. The general rule is that a Corporate Receiver pendente lite will not ordinarily be appointed unless the defendants, or at least the primary offending defendant or defendants, be shown to be insolvent. However, there are some exceptions. One of them which is well recognized is that a Receiver may be appointed to wind up the affairs of a corporation or manage and operate its business when actual fraud, or mismanagement amounting to fraud upon the rights of a minority stockholder or creditor which may reasonably portend imminent danger of loss of corporate assets and seriously threaten corporate existence, is clearly established. The strong arm of Equity should not be extended to the point of interlocutory receivership if it appears that the exercise of any other power or powers inherent in a Court of Equity will provide ample protection to the complaining party. Mirror Lake Co. v. Kirk, supra; 18 C.J.S., Corporations, § 528, page 1212, and cases therein cited. We have held many times that the puissance of a Court of Equity to establish a receivership will not be exercised "merely because [it] can do no harm." Mirror Lake Co. v. Kirk, supra [98 Fla. 493, 124 So. 721]; Apalachicola Northern R. Co. v. Sommers, supra; Lehman v. Trust Co., supra.
Counsel for respondents (plaintiffs below) cite one Florida case in support of their position. That case is Mills Development Corporation v. Shipp Head, 126 Fla. 490, 171 So. 533. They quote from that case, 171 So. on page 534, as follows:
"Where the property of a corporation is being mismanaged, or is in danger or being lost to the stockholders or judgment creditors through mismanagement, collusion, or fraud of its officers, a court of equity has inherent power to entertain a complaint for the redress of such wrong; to require the corporation's officers to make an accounting and accord to minority stockholders their legal rights and interests in the corporate affairs, and in the corporate property; and to appoint a receiver, if necessary,
for the property and affairs of such corporation upon the proper complaint of a minority stockholder asking for such relief and demonstrating an equity entitled to be recognized and given effect. Exchange Bank of Wewoka v. Bailey, 29 Okla. 246, 116 P. 812, 39 L.R.A., N.S., 1032." (Italics supplied.)
The above quotation is from the gifted pen of the late Mr. Justice Davis. The high regard and esteem which the writer has always held for the opinions and judgment of Mr. Justice Davis could not be adequately expressed if the remainder of this opinion were devoted to encomiastic comments. Nevertheless, that part of the quotation which has reference to the appointment of a Receiver was unnecessary to a proper determination of the case of Mills Development Corporation v. Shipp Head, supra. Although we find no occasion to take issue with the excerpt from that opinion, for it is legally as well as equitably sound, the words "if necessary" must be accorded "all their stark significance."
The serious charges of respondents and those which might form a basis for the appointment of a Receiver are (1) that through the Hildemart Corporation which Schine manages, controls and dominates, he has withdrawn $300,000 of corporate funds for managerial services worth not more than $36,000; (2) that he claims to have loaned to the Hotel Corporation $1,450,000 and such indebtedness is payable on Schine's demand; (3) that he has illegally withdrawn from corporate funds interest on such alleged indebtedness at the rate of six per cent per annum; (4) that under Schine's management the Hotel property was operated at a loss (during a period of 21 months) in excess of $270,000; (5) that as the Chancellor found, Schine is designedly using his power and *Page 204 
dominance to "freeze" the complaining stockholders out of the corporation by fraudulent and illegal absorption of corporate funds.
With reference to the first charge concerning withdrawal through the Hildemart Corporation of $300,000 of corporate funds for managerial services, it is clear that Schatzberg was a participant in negotiations concerning, and knew all about, the contract with Hildemart Corporation from its inception. Moreover, it would have been but a simple matter for the Chancellor to have enjoined further payments under the contract to Hildemart Corporation. In connection with the alleged loan by Schine to the Hotel Corporation of $1,450,000 and payment of interest thereon to himself at the rate of six per cent, the Court might have enjoined further payments by the Hotel Corporation to Schine upon the principal amount claimed and upon interest. The claim of an operating loss in connection with the hotel in excess of $270,000 is readily understandable when it is observed that this figure includes more than $180,000 charged off as depreciation and that there were other bookkeeping charges and reserves. Mr. Ferguson, a Certified Public Accountant, testified that the actual cash loss sustained was around $38,000 which, according to Mr. J.N. Morris, leasee and operator of the neighboring Alcazar Hotel, was considerably less than the loss sustained by the Alcazar of $84,000 over a period of fourteen months. The McAllister Hotel was being rehabilitated, after use during the War by the U.S. Navy, when the loss, or most of it, occurred. The Chancellor's finding that Schine's conduct shows he is designedly using his power and dominance to "freeze" the complaining stockholders out of the corporation by the fraudulent and illegal absorption of corporate funds is, at this point in the litigation, relatively unimportant when we realize that such "freezing out" could not be accomplished pending final hearing if appropriate interlocutory relief be granted.
Exceedingly heavy charges and expenses are usually attendant upon a receivership of a corporation such as the one involved here. They might well prove disastrous to all parties litigant. For the sake of emphasis, reference is made once again to the fact that there is no charge of insolvency against any of the petitioners and, to use the language of counsel for respondents, J. Meyer Schine (the alleged culprit) is "a fabulously wealthy man." Moreover, the damages which may exist are readily ascertainable in dollars and cents figures and could be surcharged or lien or judgment for such amounts enforced or entered upon the interest, or against the person of such defendants as the Court may find to be responsible therefor.
We are of the opinion that the Chancellor may throw every protection and safeguard around the possible ultimate rights of the respondents by the exercise of his injunctive power, or other appropriate equitable processes. Resort to the drastic expedient of receivership pendente lite was unnecessary, even if it should be the only proper ultimate alternative. Indeed, the record convinces us that ample protection exists and will exist by virtue of the facts (a) that the McAllister Hotel "is worth at a minimum Two Million Dollars," according to the statement of counsel for respondents; (b) petitioner J. Meyer Schine, who manages, controls and dominates the Hildemart Corporation, aFlorida Corporation, and who also exclusively manages, controls and dominates Schine Chain Theatres, Inc., which owns fifty per cent of the stock of the McAllister Hotel, Inc., which corporation holds title to the McAllister Hotel, is "a fabulously wealthy man"; (c) no one of the petitioners is alleged or shown to be insolvent, in fact, the contrary is disclosed by the record; (d) there is no creditable showing that the McAllister Hotel, which is the corporation's only valuable asset, has been mismanaged but it is averred that the proceeds derived from its operation have been misapplied and wrongfully expended to the ultimate benefit of J. Meyer Schine who is financially able to pay any sur-charge which the Court might direct; (e) all of the alleged offending parties are before the court and the Chancellor may enter *Page 205 
such orders as he deems necessary for the safety and protection of respondents' rights as they now appear and as they may be determined upon final hearing.
The petition for writ of certiorari should be and it is hereby granted and the order complained of should be and it is hereby quashed.
It is so ordered.
ADAMS, C.J., and THOMAS and BARNS, JJ., concur.