186 So.2d 545 (1966)
Fred H. EDENFIELD, Mae W. Edenfield, and Fred H. Edenfield, Jr., and Fred's Barn, Inc., a Florida Corporation, Appellants,
v.
James W. CRISP, Jr., and Raymond Call, Individually and As Minority Stockholders of Fred's Barn, Inc., a Florida Corporation, Appellees.
No. 6950.
District Court of Appeal of Florida. Second District.
May 18, 1966.
Rehearing Denied June 10, 1966.
*546 Duane A. Reynolds, of Henderson, Franklin, Starnes & Holt, Fort Myers, for appellants Edenfield.
William L. Stewart, of Stewart & Stewart, Fort Myers, for appellant Fred's Barn, Inc.
James W. Moore, Naples, for appellees.
PIERCE, Judge.
This is an interlocutory appeal from an order entered sua sponte by the Chancellor below, appointing a receiver for Fred's Barn, Inc., a corporation, in a stockholder's derivative suit filed in the Collier County Circuit Court.
James W. Crisp, Jr., and Raymond Cail, minority stockholders of Fred's Barn, Inc., a Florida corporation, owning between them 5400 shares of stock out of a total issue of 15,053 shares, filed complaint against Fred H. Edenfield, Mae W. Edenfield and Fred H. Edenfield, Jr., owners of a total of 8700 shares in the corporation, and aggregating a majority. Mae W. Edenfield was the wife of Fred H. Edenfield, and Fred H. Edenfield, Jr., is their son. It was alleged that the Edenfields constituted the Board of Directors exclusively, and were also the only officers of the corporation, Fred H. Edenfield being the President, his son Vice President, and his wife Secretary-treasurer. It was alleged that the Edenfields had always voted their stock in a block at stockholders' meetings, thereby exercising "absolute control" of the corporation, which situation had existed for ten years immediately prior to filing of the complaint.
Many and numerous detailed charges of fraud, mismanagement, conversion, collusion, and conspiracy were alleged on the part of the Edenfields in their dominant management of the corporation's affairs, in disregard of the rights of minority stockholders, *547 including the two plaintiffs. It was alleged that at one time the corporation owned and operated one of the largest, if not the largest, grocery businesses in Immokalee, Florida, and did a large volume of business in that area of the State, but that over the years, because of the machinations and manipulations of the defendants in burdening the corporation with unnecessary costs, expenses, salaries, and outside financial ventures, the net worth of the corporation, and the consequent value of the outstanding stock thereof, had deteriorated greatly. It was also alleged that plaintiffs had consistently endeavored to get an accounting of the acts and doings of the corporate officers, and/or access to the books and records of the corporation, but without avail; that on one occasion the Edenfields agreed to permit inspection of said books and records, but later refused such access after plaintiffs had procured a qualified C.P.A. to travel at plaintiffs' expense from Miami to Immokalee "for said useless trip." It was alleged that Fred H. Edenfield finally "announced" that the grocery business was "not showing a profit" and that there was no alternative "but to close down the business," especially in view of the fact that the State Road Department was in process of condemning "so much of the grocery store property that there would not be room to profitably operate the business," but that he failed to advise that he had already individually acquired and then owned the property immediately adjacent to the grocery store property of Fred's Barn, Inc.; on which adjacent property the Edenfields have since constructed a new building and are in process of operating a grocery store "almost identical to that which had been operated by Fred's Barn, Inc., and that they even used the name `Fred's' for said business." It was alleged that the defendants had moved the equipment, stock in trade, books, records, market equipment, compressors, freezing units and other machinery and equipment of Fred's Barn, Inc., of a balance sheet valuation in excess of $86,000.00, into the newly constructed adjoining building. It was alleged that the Edenfields are now operating the grocery store business known as "Fred's" and that the business of "Fred's Barn, Inc." has been closed down. Many and numerous other allegations in like vein were contained in the 17-page complaint.
It further appeared from the complaint that the sum of $20,000.00 was being held by the Clerk of the Circuit Court for Collier County, Florida, in the registry of that Court, for the benefit of Fred's Barn, Inc., and/or the Edenfields, derived from a condemnation suit filed by the State Road Department of Florida, but that the Edenfields were endeavoring to effect transfer thereof to them personally. Said sum had been awarded in a Court condemnation trial as reimbursement for the acquisition of certain real property of Fred's Barn, Inc., by the Road Department.
The complaint prayed for an order appointing a receiver for Fred's Barn, Inc. to take charge of the property and assets of the corporation; that if such receiver was not appointed, plaintiffs or their representatives would be decreed the right of access to and examination of the files, books and records of the corporation; that an accounting be rendered by the Edenfields of their acts and doings as majority stockholders; that the corporation be reimbursed for the moneys and other property and assets alleged to have been wrongfully dissipated and converted therefrom; that the $20,000.00 held by the Court Clerk be turned over to the receiver as the property of Fred's Barn, Inc.; and that after the property and assets of the corporation had been recovered and its creditors paid, the corporation be dissolved and its remaining assets made liquid and distributed to the stockholders of the corporation according to their respective interests therein.
Thereafter, on November 8, 1965, the Chancellor issued order calling for the holding of a pre-trial conference in the case on January 19, 1966, and sent copies to all parties to the suit. The pre-trial conference *548 was held on that date but was not completed, and was continued until March 18, 1966 by order of Court, and the parties were directed in the order to complete their discovery depositions, interrogatories, motions for production, requests for admissions, etc., prior to the continued date. On said January 19, 1966, the chancellor by separate order appointed ex mero motu Alfred J. Hackney as Receiver for Fred's Barn, Inc., with directions to file a receiver's bond in the amount of $1,000.00, to be approved by the Clerk of the Court. The receiver was empowered in the order to wind up the affairs of the corporation, marshal all assets, determine all creditors, procure each creditor to file a claim with him, determine the validity of each such claim, paying those claims found to be valid, collect all outstanding accounts receivable, make a complete inventory of all assets of the corporation, and hold all remaining assets to be distributed pursuant to the Court's order.[1] The Circuit Clerk was directed to turn over to the said receiver the $20,000.00 that had been awarded to Fred's Barn, Inc., in and by the condemnation judgment. At request of defendants, the order recited that it was issued without taking of sworn testimony and without prior notice of application for the appointment of such receiver, and without any stipulation of counsel therefor.
The Edenfields have filed their Notice of Appeal from said order of January 19, 1966, appointing the receiver, and in this Court contend that the said order of the Chancellor was improperly entered and should be reversed and set aside.
The appointment of a receiver to take over the affairs and assets of the corporation is always a very sensitive matter, and one which should be approached with caution and circumspection. While the appointment of a receiver of property during litigation always rests in the Court's sound discretion, certain well-established rules should be observed in the exercise of such discretion. Decumbe v. Smith, 1940, 143 Fla. 5, 196 So. 595; Wilkins v. Wilkins, 1940, 144 Fla. 590, 198 So. 335; Dixie Music Co. v. Pike, 1939, 135 Fla. 671, 185 So. 441; Welch v. Gray Moss Bondholders Corporation, 1937, 128 Fla. 722, 175 So. 529; Mirror Lake Co. v. Kirk Securities Corporation, 1929, 98 Fla. 946, 124 So. 719; Armour Fertilizer Works v. First Nat. Bank, 1924, 87 Fla. 436, 100 So. 362.
The power of a Court of equity to appoint a receiver will not be exercised merely because it can do no harm, McAllister Hotel v. Schatzberg, Fla. 1949, 40 So.2d 201; Lehman v. Trust Co. of America, 1909, 57 Fla. 473, 49 So. 502, or generally until after an opportunity is given for an adversary hearing, Hillsborough Grocery Co. v. Ingalls, 1910, 60 Fla. 105, 53 So. 930, or merely because the parties to the litigation consent to the appointment, Armour Fertilizer Works v. First Nat. Bank, supra; also a receiver, especially where his duties will consist of or include the handling of substantial sums of money, should be required to file a bond, with good and sufficient surety, payable to the State, in an adequate amount to be fixed by the Court, conditioned on his faithful performance of his prescribed duties, Belk's Department Store, Miami, Inc. v. Scherman, Fla.App. 1960, 117 So.2d 845.
The appointment of a receiver in the instant case was patently irregular in several particulars. No specific motion had been made by any of the parties to the cause for such appointment at that particular time. It apparently had not been noticed as a matter to be taken up by the Court. The record is silent as to whether any sworn evidence was adduced before the Court. And the provisions of the order of appointment with respect to the receiver's bond were inadequate; the amount was fixed at $1,000.00, which amount was *549 somewhat insufficient in the light of his imminent possession of considerable assets of the corporation, including $20,000.00 in cash, all provided in the same order of appointment. Also the obligee in the bond was not specified, no provision was made as to sufficiency of sureties, nor was any reference made to conditions of the bond as may be required by law.
But while the appointment of the receiver here was irregular, it does not necessarily follow that it constituted such an abuse of discretion on the part of the Chancellor as to warrant or require this Court to reverse and set it aside. The power to appoint a receiver is always one that is inherent in a Court of equity, Armour Fertilizer Works v. First Natl. Bank, supra, and Bayview Homes Co. v. Sanders, 1931, 102 Fla. 516, 136 So. 234, and such appointment in a proper case is well settled, Beard v. Viser, 1923, 86 Fla. 265, 97 So. 718. A receiver after all is the agent of the Court, and his possession of receivership funds is the Court's possession, notwithstanding the Court took possession erroneously, Jackson v. H.M. Wade Mfg. Co., 1932, 105 Fla. 560, 142 So. 228. Also, in the instant case Fred's Barn, Inc., was a dormant corporation, not doing a current, active business. And there was $20,000.00 being held in the registry of the Court belonging to the corporation, which amount was in need of being brought into and under the Court's more immediate control and direction.
Another consideration gives justification to the Court's action in appointing a receiver under the circumstances disclosed, overlooking for the moment the technical deficiencies in the order. The Circuit Judge has very broad powers and authority at a pre-trial conference duly noticed by the Judge to all parties concerned. Rule 1.16 of the F.R.C.P., 30 F.S.A. provides numerous specific things the trial Judge may do at a pre-trial conference, and after listing such specific items, winds up with the all-embracing language: "[s]uch other matters as may aid in the disposition of the action." And the Rule provides that the Court may "consider and determine" such matters either "of its own motion or * * * on motion of either party to the cause."
Under his aforesaid authority at pre-trial conference, the Judge may narrow or clarify the issues between the parties and specify the issues to be tried, the amendments if any to be made to the pleadings, recognize admissions of fact and of documents, limit the number of expert witnesses, make preliminary rulings on matters of law relating to the case, and adjudge the competency and admissibility of evidence, Collier v. McKesson, Fla.App. 1960, 121 So.2d 673. And at pre-trial, the Judge may even enter summary final judgment or decree on his own motion, probably the most drastic procedural device provided by the rules, Bess v. 17545 Collins Ave., Inc., Fla. 1957, 98 So.2d 490. And when the trial Judge gives advance written notice to the parties of the holding of a pre-trial conference, the litigants thereupon are put upon affirmative notice that the Judge may exercise any of the broad powers at his disposal at such hearing, even to the point of terminating the litigation by entry of summary judgment, without specifying in his order the particular areas to be covered, Green v. Manly Const. Co., Fla.App. 1964, 159 So.2d 881.
Under the stated facts which confronted the able Chancellor in the instant case on January 19, 1966, where the corporation was completely inactive, where a large sum of money was in the Court's registry belonging to the corporation which properly should have been more immediately within the arm of the Court, where other substantial property and assets of the corporation was being or had been allegedly diverted, we will not hold the Chancellor in error in his issuance ex mero motu of the receivership order. The order should, however, be modified and/or clarified so as to enlarge the Receiver's bond to a more realistic figure *550 commensurate with the assets presently and prospectively in his possession or under his control, specify the obligee in the bond, and provide the conditions thereof. That upon such modification of the order, the trial Judge should proceed with dispatch to the trial of the cause on the merits, to the end that the litigation may be terminated and the rights of the parties fixed and determined.
This cause is thereupon returned to the lower Court, with directions to modify the order appointing Receiver in the particulars beforementioned and in such other particulars as may seem proper or expedient, and upon such order being so modified, the same shall be and stand affirmed.
Affirmed with directions.
ALLEN, C.J., and SHANNON, J., concur.
NOTES
[1] All these powers and directions are questionable in what is palpably an interlocutory order, but in view of the final disposition of this appeal the Chancellor will be able to handle these matters appropriately.