CASANUEVA, Judge.
 

 Over strenuous objection from the appellant, the Department of Environmental Protection (DEP), the circuit court appointed it receiver and operator of a failing
 
 *435
 
 wastewater treatment plant in Highlands County. The DEP appeals this nonfinal order pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(D), raising several issues. We review the circuit court’s order granting the petition to appoint the DEP as receiver under an abuse of discretion standard.
 
 See Edenfield v. Crisp,
 
 186 So.2d 545, 548 (Fla. 2d DCA 1966) (citing
 
 Welch v. Gray Moss Bondholders Corp.,
 
 128 Fla. 722, 175 So. 529 (1937)). We reverse because we agree that the circuit court abused its discretion by appointing an unqualified receiver, the DEP.
 

 I. Background
 

 Thunderbird Hills Wastewater Treatment Plant (the facility), owned by appel-lee Landmark Enterprises, Inc., and operated by Landmark’s principal, appellee David S. Plank, serves over five hundred households in Highlands County. It is an aging and overwhelmed facility that the DEP cited for releasing or disposing of wastewaters and residuals without proper treatment and causing pollution. In 1999, the DEP and Landmark entered into an administrative consent order to correct the many problems facing the facility. By 2002, Landmark had not complied with the requirements of the consent order and continued to operate in violation of administrative rules. As a result, the DEP filed a complaint and petition to enforce the consent order against Landmark and Mr. Plank. It sought mandatory injunctive relief, monetary penalties, costs, and fees. In August 2007, the circuit court entered a stipulated order granting temporary in-junctive relief. In November 2007, when the DEP perceived that certain requirements of the injunction were not fulfilled, it filed a motion for contempt. Five months later, Landmark and Mr. Plank abandoned the facility, observing all statutory notice requirements of section 367.165, Florida Statutes (2007).
 
 [1]
 

 Pursuant to this section, Highlands County, in the ongoing suit between the DEP and Landmark and Mr. Plank, filed a petition with the circuit court to appoint
 
 *436
 
 the DEP as receiver of the facility due to the abandonment.
 
 [2]
 
 The DEP filed a written objection, and a hearing was held on the petition. On June 4, 2008, the circuit court granted the county’s petition and appointed the DEP receiver of the facility. That order is now before us.
 

 II. Analysis
 

 In its order appointing the DEP receiver of the facility, the circuit court limited its legal inquiry to whether the DEP was a “person” within the meaning of section 367.165. This provision empowers a court to appoint “any other person deemed appropriate” as receiver. § 367.165(2). The circuit court’s focus was misplaced. This reversal is based on our construction of the statutes pertaining to the DEP that fail to provide for its function as receiver. Quite simply, the statutory framework for the DEP does not authorize this role for the agency.
 

 The DEP’s governing authority, including its grant of powers, is Chapter 403, Florida Statutes, titled “Environmental Control.” The DEP points out that the sole reference linking the DEP and a receiver is in the phosphogypsum management program. In that instance, when faced with an imminent hazard, the DEP’s authority is not to act as a receiver but only to hire one. In such a circumstance, the legislature granted the DEP the power to undertake the work necessary to avoid or ameliorate the imminent hazard. § 403.4154(3)(e), Fla. Stat. (2008).
 

 Aside from this one instance in the phos-phogypsum management program, no one has directed us to any instance in our statutes, nor have we been able to discover on our own, where the DEP is authorized to act as a receiver or expend it's appropriations to hire one.
 
 Cf.
 
 § 403.061(2) (authorizing the DEP to “[h]ire only such employees as may be necessary to effectuate the responsibilities of the department”). Section 403.061 contains an extensive list of the DEP’s powers and duties, all dealing with its regulatory role in protecting Florida’s natural environment.
 
 See also
 
 § 403.021 (titled “[legislative declaration; public policy”). If the legislature desired the DEP to act as a receiver, it knew how to do so, as illustrated by instances where it empowered other state agencies to so act when needed. For example, section 409.1675(2)(e), Florida Statutes (2008), authorizes the Department of Children and Family Services to petition the court to appoint a receiver for a lead community-based provider of services to dependent children that cannot properly continue functioning by providing: “[T]he court may appoint any person, including an employee of the department who is qualified ... to carry out the duties of the receiver pursuant to this section, except that the court shall not appoint any member of the governing board or any officer of the lead
 
 *437
 
 community-based provider.”
 
 See also
 
 § 440.386(6), Fla. Stat. (2008) (“QUALIFICATIONS OF RECEIVERS. — A receiver shall in all cases be a natural person or a corporation authorized to act as receiver, which corporation may be a domestic corporation or a foreign corporation authorized to transact business in this state.... ”).
 

 III. Conclusion
 

 Simply put, the DEP, as a creature of statute, is governed by statute. It can exercise only the powers granted it by the legislature. It is not empowered to act as a receiver for an abandoned wastewater treatment facility, despite its expertise in pollution control. In appointing the DEP as receiver of Thunderbird Hills Wastewa-ter Treatment Plant, the circuit court in effect ordered the DEP to act ultra vires. Accordingly, we must reverse.
 

 We are cognizant that this reversal does little to aid the circuit court when it faces again the unenviable task of appointing a willing and qualified entity to assume the thankless task of operating this problem-ridden facility. While the DEP is not statutorily authorized to act as receiver, it possesses the expertise to assist in resolving the present conundrum, a situation occasioned by the operators’ inability to comply with the DEP’s requirements.
 
 [3]
 
 The underlying operational problem, as presented, is unsuited to judicial resolution. Instead, its resolution must come from the executive and legislative branches, those branches of government that make and finance public policy.
 

 Appointment of receiver reversed; cause remanded for further proceedings.
 

 ALTENBERND and LaROSE, JJ., Concur.
 

 [1]
 

 . This section provides as follows:
 

 367.165. Abandonment. — It is the intent of the Legislature that water or wastewater service to the customers of a utility not be interrupted by the abandonment or placement into receivership of the utility. To that end:
 

 (1)No person, lessee, trustee, or receiver owning, operating, managing, or controlling a utility shall abandon the utility without giving 60 days' notice to the county or counties in which the utility is located and to the commission. Anyone who violates the provisions of this subsection is guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083. Each day of such abandonment constitutes a separate offense. In addition, such act is a violation of this chapter, and the commission may impose upon the utility a penalty for each such offense of not more than $5,000 or may amend, suspend, or revoke its certificate of authorization; each day of such abandonment without prior notice constitutes a separate offense.
 

 (2) After receiving such notice, the county, or counties acting jointly if more than one county is affected, shall petition the circuit court of the judicial circuit in which such utility is domiciled to appoint a receiver, which may be the governing body of a political subdivision or any other person deemed appropriate. The receiver shall operate the utility from the date of abandonment until such time as the receiver disposes of the property of the utility in a manner designed to continue the efficient and effective operation of utility service.
 

 (3) The notification to the commission under subsection (1) is sufficient cause for revocation, suspension, or amendment of the certificate of authorization of the utility as of the date of abandonment. The receiver operating such utility shall be considered to hold a temporary authorization from the commission, and the approved rates of the utility shall be deemed to be the interim rates of the receiver until modified by the commission.
 

 [2]
 

 . Although not germane to the ultimate merits of this cause, the DEP notes the impropriety of the procedure that Highlands County used in injecting itself into this suit without leave of court to intervene or be named a party. The DEP claims that the county was required to initiate a separate suit by virtue of the directive in section 367.165(2) that a county petition the circuit court of the judicial circuit where the facility is domiciled. It appears to us that the county did file such a petition, albeit in this suit. We find no language in the statute that requires a petitioner to commence a separate suit and find the procedure used in this case, although unorthodox, harmless and at least a good use of judicial resources; it allowed a judge already familiar with the problems to rule on a related matter.
 

 Moreover, in its written objection to the petition, the DEP did not dispute the manner in which the county had injected itself into the proceedings.
 

 [3]
 

 . Whether the operators’ inability to comply with the DEP's requirements was caused by incompetence, unwillingness, or some other reason is not part of the present problem. But it is clear that resolving the present impasse over the facility’s operation will necessarily involve the expertise of the agency charged with environmental protection, the DEP. It would be unfortunate indeed if the DEP would now act as a bystander while the physical health of the affected residents and the environmental health of the State of Florida remain at risk.