FLORIDA YACHT CLUB, A CORPORATION, *Appellant*, v. H. A. RENFROE, MINNIE RENFROE, HIS WIFE, AND THE RIVERSIDE COMPANY, A CORPORATION, *Appellees*.

Opinion Filed March 3, 1914.

1. A lease of real estate for twenty years, containing an option by the lessee to purchase the leased premises at any time during the life of the lease—the purchase price to be fixed by five arbitrators or appraisers—two to be chosen by the lessor, two by the lessee, and the fifth by the other four— is a legal and binding contract enforcable in equity between the parties to the lease contract and their assigns and privies, the words "at a price and upon terms to be decided, fixed and determined by a majority vote of the board of five arbitrators," taken in connection with the context could only mean that the arbitrators were to fix the price to be paid for the property and the time and manner of payment, and the only proper parties to engage in the selection of the arbitrators were the complainant and the owner of the legal title.

2. A contract of lease containing an option on the part of the lessee to purchase land, upon acceptance of the option becomes a binding contract between the parties, and implies that a good title shall be made.

Appealed from Circuit Court for Duval County; M. F. Horne, Judge.

Order reversed.

*Alston Cockrell* and *Byard B. Shields*, for Appellant;

*John C. Cooper*, for Appellees.

HOCKER, J.—The appellant filed a bill in the Circuit Court of Duval County against H. E. Renfroe, Minnie

Renfroe, his wife, and the Riverside Company, a corporation, alleging in substance that on to-wit, the 1st of January, 1907, the Riverside Company owned or claimed to be seized and possessed of a certain described lot of land situated in the City of Jacksonville, Duval County, and on that date entered into a certain agreement and lease in regard to said land with appellant, which was duly recorded on the 16th of March, 1907, a copy of which lease is made a part of the bill; that by the terms of said lease and agreement, the Riverside Company, in consideration of the payment by appellant of the taxes, State, county and city, which might be legally assessed against said property, and in further consideration of the erection by appellant of a Club House costing not less than $4,000.00 on said land, among other things, leased said land to appellant not including riparian rights, for the term of twenty years from the date of the lease; that by the terms of said agreement and lease, among other things, the Riverside Company covenanted and agreed that appellant (orator) should have the right to purchase said land, including riparian rights, at any time before the termination of said lease, for and at a price and upon terms to be fixed and determined by a majority vote of a board of five arbitrators, two of which should be chosen by the lessor, two by the lessee (orator and appellant), and the fifth by a majority vote of the four thus chosen; that orator upon the execution and delivery of said lease and agreement, and in accordance with its terms, went into possession of the said land, and has continued in possession thereof ever since; that shortly after it caused a Club House to be erected thereon costing about $9,000.00, has fully paid all taxes due and payable on the land from the time of the execution of the said agreement and lease until the present time; and

orator (appellant) has fully complied with, kept and performed all the agreements and covenants by it to be kept and performed under said lease and agreement. It is provided in said lease and agreement that all buildings which might be erected on said land during the life of the lease should be the exclusive property of orator, and orator should have the right to mortgage or otherwise encumber said buildings as freely and fully as if the same were on the property of orator; that on, to-wit, the 3rd day of May, 1911, the Riverside Company conveyed by warranty deed to the defendant H. A. Renfroe, along with other lands, the above described lands, which it had theretofore leased to grantor, but subject to the lease, which warranty deed was recorded on May 3rd, 1911, in the public records of Duval County, Florida, naming the Deed Book and page; that by the terms of the lease and agreement from the Riverside Company to orator it was agreed that said lease should be binding upon the successors and assigns of the Riverside Company, and that upon the execution and delivery of the aforesaid warranty deed to H. A. Renfroe, he became charged and bound with and by all the covenants and agreements by which the Riverside Company was charged and bound by said lease; that on the same day, May 3rd, 1911, the Riverside Company conveyed said land to H. A. Renfroe, aforesaid, said Renfroe, joined by his wife, Minnie Renfroe, executed to the defendant, the Riverside Company, a mortgage encumbering with other lands the said land leased to your orator, which mortgage recites it was given to secure the payment of the sum of $7,000.00, five years after its date, with interest at the rate of eight per cent. per annum, which was recorded on the same day in Mortgage Book 49, at page 270 of the public records of Duval County, Florida; that some time after

the execution and delivery of the deed and mortgage last above mentioned, the orator (appellant) being desirous of exercising its rights to purchase said land under the provisions of the agreement and lease to it from the Riverside Company dated January 1st, 1907, notified the defendant H. A. Renfroe of its said desire, and of the appointment of two arbitrators, to represent orator, and requested H. A. Renfroe to appoint two arbitrators to represent him; that on November 1st, 1911, defendant Renfroe notified orator of the appointment by him of two arbitrators to represent him; that on June 21st, 1912, the four arbitrators thus chosen met and selected unanimously a fifth arbitrator, which will appear from a copy of the minutes of their meeting attached to the bill and marked Exhibit "B;" that on June 12th, 1912, the arbitrators met and by a majority vote decided, fixed and determined that the price to be paid by orator to H. A. Renfroe for the above described property, including riparian rights, should be $3,500.00, and that the terms of sale should be cash, within ninety days from the date of said meeting, which will appear from a copy of minutes of said meeting attached to the bill as Exhibit "C;" and said arbitrators thereupon duly notified H. A. Renfroe and the orator of their award and findings; that in pursuance of the agreement and the award, orator at about 12:30 o'clock p. m. on July 25th, 1912, tendered H. A. Renfroe, in the city of Jacksonville, the sum of $3,500.00 in gold coin of the United States, and demanded from Renfroe a deed to said land, including riparian rights. Renfroe refused the money so tendered, and refused, and still refuses to make the deed to the land and riparian rights. Orator ever since the 25th of July, 1912, has been and is still ready to pay Renfroe the sum of $3,500.00, and to receive a deed from him to said land and the ri-

parian rights. The bill prays that H. A. Renfroe, Minnie Renfroe, his wife, and the Riverside Company be required to answer the bill, but not under oath; that the Riverside Company may be restrained and enjoined during the pendency of this suit from assigning, selling or transferring the said' mortgage and the debt thereby secured, the note or other evidences thereof during the pendency of this suit; that defendant Renfroe and Minnie, his wife, be restrained during the pendency of this suit from encumbering any right or title they may have in the land; that the Riverside Company may be decreed to cancel and satisfy in full, as to said land, including riparian rights, the mortgage herein referred to; that H. A. Renfroe may be decreed specifically to perform the agreements contained in the lease to the orator, dated the 1st day of January, 1907, and in the findings and awards of the arbitrators before mentioned to make a good and sufficient deed to the orator of the premises including riparian rights, orators being willing and ready, and hereby offering to perform said agreements on his part, and upon the said H. A. Renfroe making a good and sufficient title and deed to your orator, to pay Renfroe the said sum of $3,500.00 and that defendant Minnie Renfroe be forever barred and foreclosed of any right of dower or homestead, contingent or otherwise, that she may have in said land, and for further relief. The agreement and lease executed by the Riverside Company to orator, the Florida Yacht Club, dated January 1st, 1907, was signed and sealed by the respective parties and recorded. The foregoing presents enough of the bill to determine the questions raised by the demurrer.

The Riverside Company demurred to the bill on five grounds, which briefly stated, are: 1. No equity in the bill. 2. The bill is multifarious, in that it asks specific

performance against Renfroe and wife, and asks that the mortgage from Renfroe and his wife be cancelled. 3. No allegation in the bill to support the prayer to enjoin the Riverside Company from assigning, etc., the mortgage and debt thereby secured. 4. The bill does not allege that the Riverside Company or its successors or assigns agreed to convey the land to complainant free of encumbrances. In a bill for specific performance for the sale of the real estate complainant can have only such title conveyed to him as the defendant holding the legal title has.

On the 31st day of July, 1913, the Circuit Judge sustained this demurrer on the first ground, that there was no equity in the bill.

On the 4th of November, 1913, the defendant, H. A. Renfroe, filed a joint and several demurrer to the bill, containing eight grounds, as follows: 1. No equity in the bill. 2. Bill multifarious, because it joins two separate cause of action, viz.: specific performance against Renfroe and wife, and to have the mortgage from Renfroe and wife to the Riverside Company cancelled so far as the land involved is concerned. 3. Because the bill does not allege that Minnie Renfroe ever executed any agreement or received any title to the property which would entitle complainant to maintain a bill against her. 4. The bill is multifarious in joining Minnie Renfroe as a party defendant to said cause and attempting to obtain any relief of specific performance against her. 5. The bill does not allege or set forth any facts showing that the said complainant is entitled to specific performance against these defendants, H. A. Renfroe and Minnie Renfroe, or either of them. 6. There is no allegation in the bill to support the prayer seeking to enjoin the defendant, the Riverside Company, from assigning, sell-

ing or transferring the said mortgage and indebtedness thereby secured, and the note, or other evidence thereof, in fact the bill does specifically state that the said mortgage covers other land than that involved in this suit. This ground in substance alleges and assigns that the bill nowhere alleges, nor does the copy of said lease attached as Exhibit "A" state that the Riverside Company or its successors or assigns agreed to convey the said land to complainant free from encumbrances. Since complainant has brought its bill against H. A. Renfroe, assignee of the Riverside Company, they must take title from said Renfroe, and they have no ground for relief against the defendant, the Riverside Company, and they must under the terms of the lease take only such title as the assignee of the Riverside Company has. 8. In a bill for specific performance for the sale of real estate, the complainant can have only such title conveyed to him as the defendant holding the legal title has; and the effort to cure defects in the said title cannot be joined with a demand for specific performance. For this reason the Riverside Company is not a proper party to said bill, etc. On a hearing before the Circuit Judge he sustained this demurrer to the bill on the first ground.

It is admitted that the principal ground of demurrer is that the bill is without equity. The first position of appellees under the first ground of demurrer is that the appellant's right to specific performance is not clear and certain, but based upon an uncertain agreement and a void and incomplete arbitration. Amongst other things it is urged that the possession of the lease providing for a reference to arbitrators is uncertain as to just what the arbitrators are to consider and what they are to decide upon other than the matter of price. Just what is intended to be included in the "terms" to be decided

by the arbitrators is uncertain. Great stress is laid on this point in the brief of appellees, and also in the oral argument. In our judgment there is no ground for this criticism. The words "at a price and upon terms to be decided fixed and determined by a majority vote of a board of five arbitrators," taken in connection with the context could only mean that the arbitrators were to fix the price to be paid for the property, and the time and manner of payment. These words are of frequent use in contracts in this sense. Fry on Specific Performance (5th ed.), pp. 188, 188c. The facts in the instant case are not like those in Maloy v. Boyett, 53 Fla. 956, 43 South. Rep. 243. In the latter case the alleged contract for the sale of the lands involved was not in writing, but alleged to be a parol contract, and was denied by the defendants. The appellees cite us to no decided case where the facts were similar to the one at bar.

The next contention made by appellees is that neither the Riverside Company nor Minnie Renfroe were parties to the selection of the arbitrators, or to the arbitration proceedings. Strictly speaking this proceeding was not an arbitration. There was no dispute between the parties to settle. It was simply a procedure to make certain terms of the contract certain, and which it was agreed in the contract should be made certain by this method. *"Id certum est quod certum, reddi potest."* 2 Am. & Eng. Ency. Law (2nd ed.) 539. The contract did not provide that any one should be a party to the so-called arbitration proceeding except the Florida Yacht Club and the Riverside Company, which then owned the legal title to the property involved. The clear implication from this lease, and the option contained therein, is that the Florida Yacht Club when it exercised its option to purchase the property and paid the price fixed

by the arbitrators, was to receive a legal title to the property. It could only receive such title from the owner thereof. Renfroe became the owner of the legal title by warranty deed long after the option agreement was made and with full knowledge of it. It is alleged in the bill that the sale to Renfroe was made subject to the lease of the appellant. Moreover, the Riverside Company was a party to the agreement with appellant, and Renfro was privy to that contract. They are each bound by the terms of the lease and option agreement therein. We do not see that either Renfroe, his wife, or the Riverside Company under the circumstances had any right to appoint either of the so-called arbitrators, or to notice of their meetings. Renfroe agreed in the appointment of the arbitrators, and he had the legal title which the Yacht Club was entitled to buy, and it was entitled to buy it free from any encumbrances which the Rievrside Company or Renfroe had created in their dealings with each other. 6 Pomeroy's Eq. Jur. paragraphs 779, 780. It is said in 3 Cyc. 728, that "as between the parties and their privies, an award is entitled to that respect which is due to the judgment of a court of last resort," quoting a number of decisions. On page 664 Id. it is said, "It is an established principle that submissions are to be liberally construed, so as to give effect to the intention of the parties. Every reasonable intendment is to be made in their favor." Hanover Fire Ins. Co. v. B. C. Lewis, 28 Fla. 209.

We do not agree with the contention of the appellees that the terms of the lease so far as they refer to the purchase of the property by the lessee (the appellant), are too indefinite and uncertain to be enforced. The acceptance of the option by the appellant created a binding contract between the parties and their privies.

It is contended that the option contained in the lease does not in terms, and is not a contract in terms requiring that the Riverside Company shall sell and convey the land, nor what character of conveyance is to be made. The acceptance of the option made of it a binding contract for the sale of the land. In every contract for the sale of land a condition is implied for a good title; but this may be waived by the purchaser. Fry on specific Performance (5th ed.) Paragraphs 373, 374.

It is contended that the submission to arbitration was invalid because not under seal. As we view the contract giving the appellant an option to purchase the land and providing that the amount to be paid and the terms and dates of payment upon the acceptance of the option should be fixed by certain persons, it became a valid contract between the parties, and a valid agreement to have the price and terms fixed in a certain way. No other submission was required; all that the parties were required to do was to name the arbitrators. The contract containing this so-called submission was under seal. Moreover, Renfroe, when called upon by appellants to name his so-called arbitrators did so, and opposed no objection to this proceeding. Again, it is said that no notice was given any of the defendants of the meeting of the arbitrators, nor was any opportunity given the said defendants for a hearing before the arbitrators. The contract did not provide for such notice or hearing. These persons called arbitrators had no dispute to arbitrate. They were required by the contract to fix the price of the property and terms of payments, and there is nothing to show that they were not expected to do these things from their own personal knowledge of the property and the situation of the parties. They appear to have been mere appraisers or valuers selected by reason

of their personal knowledge of the matters submitted to them, otherwise hearings and notice to the parties would have been provided for. 3 Cyc., pp. 647, 648. Hanover Fire Ins. Co. v. B. C. Lewis, *supra* 247.

It is objected that the so-called arbitrators did not in their award state by whom the conveyance of the property should be made, or the character of the conveyance which should be made. From our view these were not necessary. The conveyance could only be made by Renfroe, who had the legal title, joined by his wife. He was a privy to the contract, and had assumed its obligations to the appellant, and the law implies he should make a good deed. It seems to us that what we have said covers every material question raised in the brief of appellees, and it follows from what we have said that we believe that there is equity in the bill as to all the defendants, and that it is not multifarious. As to Minnie Renfroe, it is admitted she had acquired a dower interest in the property. The appellant had the right to have the courts decide whether her rights were subordinate to those of appellant, and she was therefore a proper party to the suit. If the Riverside Company wishes to apply the amount the so-called arbitrators or appraisers found should be paid Renfroe for the property on the mortgage debt of Renfroe to it, it can do so by petition or other appropriate remedy.

We think the Circuit Judge erred in sustaining the demurrers to the bill, and the orders appealed from are reversed.

SHACKLEFORD, C. J., AND TAYLOR AND WHITFIELD, J. J., concur.

COCKRELL, J., takes no part.