SHANNON, Judge.
This is an appeal from a final decree of the Chancellor below wherein he dismissed the complaint with prejudice in a suit brought by the appellant, plaintiff below, for the specific performance of a contract to sell certain real estate embracing the homestead. To the complaint the defendants had filed answers, the plaintiff had taken evidence, and the defendants had offered none when the decree appealed from was entered.
The Chancellor in his final decree said in part:
“ * * * It clearly appears from the testimony that the Defendant Estelle Austin did not want to sell the property because she was in bad health and because she wanted to rear her son on the farm. There had been many arguments between her and her husband on the subject of which the Plaintiffs’ (sic) agent, W. E. Parsons, Sr. was well aware. The Court is convinced that she finally signed the contract only because her husband threatened to leave her if she failed to do so.
“In addition, the language of the alleged contract and the understanding at the time it was signed clearly *234 show that, before closing the sale, the parties were supposed to agree on the terms of the release clause to be inserted in the mortgage. * * * Hence, the minds of the parties never met on all terms of the sale or on the provisions to be contained in the closing papers.
“Since the Defendant Estelle Austin did not voluntarily sign the agreement, and the terms of the release clause were to be later agreed upon, but never were, the Court is of the opinion that there is no legally enforceable agreement. * * * ”
It appears from the testimony that the agent of the purchaser was called over the telephone on a Saturday evening by Mrs. Austin and it was arranged for the agent and the Sellers to go to the Sellers’ attorney’s home. This they did, and an agreement was executed in his home with the addition of a clause which the agent advised the purchaser wanted. This clause was:
“The existing mortgage held by First Federal Savings and Loan Association to be paid off by parties of first part at time of execution of said deed and mortgage, and mortgage to contain a release clause to buyer as per development and sales possibilities of buyer.”
The Sellers obtained an interim title insurance binder and the purchaser had a survey made of the property. Approximately five days after the agreement was signed Mrs. Austin notified the plaintiff that she did not want to sell; Before turning down the sale no objection was made to release clause in the contract.
The plaintiff, states as the first point involved the following:
“I. May a husband and wife avoid an agreement to .sell, real property prepared by their attorney and acknowledged by them on the uncorroborated statements of each other that the wife signed the agreement only because her husband threatened to leave her if she failed to sign same?”
From the evidence it is clear this contract was prepared by the Sellers’ attorney. On the way to this attorney’s house Mrs. Austin showed the agent two lots on which, she advised him, they were going to build a house with the money received from the sale of the property. Also, according to the agent, there was no hesitancy or unhappiness on the part of Mrs. Austin at the time she executed the agreement. The vendors’ attorney was present at the time she executed the agreement, but failed to testify. The certificate of the attorney to the acknowledgment states:
“ * * * and that she executed the said instrument freely and voluntarily and without any compulsion, constraint, apprehension or fear of or from her said husband. * * * ”
The plaintiff called both Mr. and Mrs. Austin as adverse witnesses and in her testimony Mrs. Austin stated that the agent had been to her home before trying to get her to sell, and that she told him that she did not want to sell and refused his check; that she finally agreed to sign because she had had trouble with her husband, that he had fussed with her, that he threatened to leave her if she did not sign, and that she signed to keep peace. Mr. Austin corroborated her testimony. On the testimony of Mr. and Mrs. Austin, the lower court held that the contract could not be specifically enforced.
In the case of Herald v. Hardin, 95 Fla. 885, 116 So. 863, 864, where the Supreme Court affirmed a mortgage foreclosure, wherein the defendant alleged the mortgage was executed under duress, the Court stated: ■
“(2-4) It is next contended that the mortgage was executed under duress. Duress is a condition of mind pro *235 duced by an improper external pressure or influence that practically destroys the free agency of a party and causes him to do an act or make a contract not of his own volition. 18 C.J. 234. There is no testimony supporting duress except that of Mrs. Herald. The net result of her testimony is that the mortgage was executed on her part to secure an obligation that Mr. Herald owed to Mr. Hardin and that Herald was threatening to divorce her and take the children if she (Mrs. Herald) did not execute the mortgage. The testimony of Harry Klein, the notary public who took the acknowledgment of the mortgage, corroborates Mrs. Herald’s testimony as to execution to secure the obligation owed by Herald to Hardin. * * * We do not believe that the facts in this case show that the ‘free agency’ of Mrs. Herald was destroyed or that the mortgage in question was not of her ‘own volition,’ but if they did as against the holding of the chancellor the unsupported testimony of the person who executed the mortgage would . be insufficient to set it aside.”
The defendants in their brief seek to show that the language in Herald v. Hardin, supra, is much more limited and does • not cover the instant case.
 ' It is true that in the Herald case the language is limited and does not go as far as the plaintiff urges, see Meyerson v. Boyce, Fla.1957, 97 So.2d 488, but nevertheless, in the present case the facts, as to duress, require the application of a principle of law that is explicit, and that question of law had to do with what constitutes legal duress. In other words, the Chancellor must necessarily have found duress exerted by her husband as a reason why Mrs. Austin had executed the purchase agreement, but prior influence or pressure will not constitute legal duress if the act sought to be performed is later actually performed by an exercise of the actor’s free will. 17 C.J.S. Contracts § 168. We hold that the facts in this case do not show that the “free agency” of Mrs. Austin was destroyed or that the purchase agreement was not executed of her “own volition” exactly as it was held’ in Herald v. Hardin, supra, and not having found legal duress present, we will have to reverse the Chancellor on this.
. In his third point plaintiff asks the following question:
“HI. May sellers of real property avoid specific performance of a contract for the sale of real property which was prepared by their attorney, at their direction, on the ground that a subordinate provision of the contract with reference to a release clause to be contained in a mortgage to be given by buyer to secure a note for the balance of the purchase price was too indefinite?”
The evidence shows that the contract was prepared by defendants’ attorney and they executed and acknowledged the same before him. Plaintiff’s agent, at the time of preparing the contract, suggested the release clause which was put in. This was a subsidiary part of the contract, but the defendants take the position that the contract in question was not a binding contract at the time it was executed, for the reason that there was an understanding or agreement between them and the agent that the parties would get together later and agree on the terms of the release. This defense appears to have been an afterthought of the defendants. There was no such question raised at the time when the defendants advised they would not go through with the transaction.
The Supreme Court of Florida has held that in subsidiary portions of the agreement it is not necessary that absolute certainty be present. Taylor v. Mathews, 1907, 53 Fla. 776, 44 So. 146, Florida Yacht Club v. Renfroe, 67 Fla. 154, 64 So. 742.
 The release clause was ostensively for the benefit of the purchaser and re *236 gardless whether the agent of the purchaser dictated this release clause or not, any ambiguity in the language would be visited against the purchaser. Consolidated Development & Engineering Corporation v. Ortega Co., 117 Fla. 438, 158 So. 94. However, as we view the contract there is no ambiguity in the clause. The ■contract calls for a release clause and it is ■simply a question of how much should be paid for each individual release. The total of all such sums so provided should not exceed the amount of the mortgage. That such is the rule may be gathered from Taylor v. Mathews, supra; Clark v. Anrew, 5 Cir., 1926, 11 F.2d 958; Hotel Halcyon Corporation v. Miami Real Estate Co., 89 Fla. 156, 103 So. 403.
There are other points presented but in view of the decision we have reached, it will be unnecessary to decide them.
Reversed and remanded with directions for further proceedings to be had in accordance with this opinion.
KANNER, C. J., and ALLEN, J., concur.