291 So.2d 622 (1974)
Ruth E. FEEMSTER, Executrix under Will of Robert M. Feemster, Deceased, and Also Known As Ruth E. Cooper, Formerly Known As Ruth E. Feemster, Individually, and Thomas T. Cobb, As Trustee for Linda F. Fallon, Etc., et al., Appellants,
v.
Julius SCHURKMAN, d/b/a S & S Associates, Appellee.
Nos. 72-981, 72-982.
District Court of Appeal of Florida, Third District.
March 12, 1974.
Rehearing Denied April 9, 1974.
*624 Blackwell, Walker, Gray & Powers and Mark Hicks, Truett & Watkins, Michael H. Kramer, Miami, for appellants.
Koeppel, Stark, Marks & Newmark, Miami, Robert V. Shea, Coral Gables, for appellee.
Before BARKDULL, C.J., and CARROLL and HAVERFIELD, JJ.
HAVERFIELD, Judge.
In these consolidated appeals, defendant-appellants seek review of an adverse final judgment in a mortgage foreclosure action and also join with plaintiff-appellee in appealing an order awarding $14,000 as a receiver's fee.
Ruth E. Feemster, as executrix of the estate of her husband, Robert, assigned a twenty year leasehold interest in an office building to Caribbean Properties, Inc. (hereafter cited as Caribbean). In exchange for this assignment, Caribbean transferred to Mrs. Feemster 10,000 shares of stock of Windjammer International Corporation.[1] In addition to the above consideration, Caribbean also granted Mrs. Feemster an option to (1) retain or dispose of the 10,000 shares of Windjammer stock or (2) exchange the stock for an $80,000 note secured by a mortgage[2] upon the leasehold interest, such mortgage to be subject to a first mortgage held by Biscayne Federal Savings and Loan Association and the existing ground lease held by Caribbean. This option agreement was recorded on August 28, 1969.
In 1970, Caribbean was in need of money and its president Captain Burke through the assistance of one Grandwetter, a business associate who was acting as an intermediary, arranged to obtain a $65,000 loan from plaintiff-appellee, Julius Schurkman d/b/a S & S Associates, an unlicensed mortgage brokerage venture. Upon being approached by Grandwetter for the loan, Schurkman, in his customary way of raising the necessary funds, contacted a group of potential investors to consider the proposition. He then obtained the requisite amount of money from those interested investors to make the loan and each investor-lender became a participant therein. Most of the negotiations for the loan to Caribbean were carried on by Mr. Grandwetter with Schurkman. On August 18, 1970, the closing day, Captain Burke met with Mr. Schurkman and in exchange for the loan signed a note in the principal sum of $65,000 with interest at the rate of 15% per annum and pledged as security a mortgage deed encumbering Caribbean's leasehold interest in the office building. After much protestation, Burke also agreed to pay Schurkman $7,500 off the top as a "finder's fee" for procuring the loan. This mortgage was made subject to the first mortgage held by Biscayne Federal Savings and the ground lease of Caribbean and was recorded on September 2, 1970. Thereupon, Schurkman disbursed a total of $57,500 to Caribbean and retained the remaining $7,500 which he later split with Grandwetter. Captain Burke had no knowledge at that time that Schurkman was not the investor or that the finder's fee was split with Grandwetter.
Thereafter, Caribbean began to default on the payments and plaintiff Schurkman instituted suit to foreclose the mortgage on the leasehold interest. Upon his motion, the trial court appointed Robert V. Shea, Esq., as receiver to administer the property during the litigation. The complaint named as defendants in addition to Caribbean, Ruth Feemster, Richard Kramer, Thomas Cobb and Clyde Banks, who claimed an interest in the leasehold interest by virtue of their being the beneficial owners of the 10,000 shares of Windjammer stock involved in the recorded option agreement of August 28, 1969. These defendants filed an answer and counterclaim in which they alleged that the option agreement was prior *625 in time and right to plaintiff's mortgage. Defendant Caribbean filed an amended counterclaim alleging plaintiff's note and mortgage were unenforceable as violative of the Florida usury statutes as a result of the $7,500 finder's fee. Plaintiff-appellee in response to Caribbean's counterclaim alleged that he was acting as the agent of Caribbean in obtaining the loan and since he had no financial interest in the loan, his taking the finder's fee did not make the loan usurious. After a trial on the cause, the judge issued the following findings and order thereon:
* * * * * *
"(A) That there are two issues for determination, namely the question of usury, if any and the question of priority between a prior recorded `option to mortgage' and the mortgage herein sought to be foreclosed.
"(B) Upon the question of usury, the Court finds that the circumstances concerning the acquisition of the loan by CARIBBEAN PROPERTIES, INC. and the posture of the Plaintiff with regard to that acquisition and with regard to securing the lenders, is susceptible to two different constructions. The Court finds with regard thereto that the burden of proof of usury according to the law of Florida falls upon the Defendants herein and they are required to prove by competent substantial evidence such accusation.
"(C) From the facts of the case it appears that the Plaintiff was the agent of CARIBBEAN PROPERTIES, INC. with regard to CARIBBEAN obtaining a loan or executing the mortgage being foreclosed; that although the Plaintiff did represent the five participating lenders, the taking of the mortgage in his name was a convenience to aid in disbursing of funds and in the collection of funds; that the Plaintiff had no financial interest in the loan itself and the taking or receiving of a `finder's fee' from the Defendant, CARIBBEAN, did not make the loan usurious. See Shaffran vs. Holness [Fla.App.], 102 So.2d 35 and Cutri Enterprises, Inc. vs. Pan American Bank of Miami [Fla.App.], 115 So.2d 592.
"(D) At the inception of these proceedings, the Court was of the opinion that the recording of the `option to take a mortgage four years hence' placed all of the Defendants (except CARIBBEAN) ahead of all persons recording thereafter including the Plaintiff, but after wrestling with the problem and recalling the testimony in the cause and studying the briefs of the parties and the cases cited therein, the Court finds that the controlling cases must be Smith vs. Metzler, et al. [104 Fla. 315], 139 So. 823 and Guaranty Title & Trust Co. vs. Thompson [93 Fla. 983], 113 So. [117] 118.
"(E) The `option to mortgage' which was recorded by the Defendants (except CARIBBEAN) was taken by those Defendants with the knowledge that if there was a default in the underlying land lease, or in the first mortgage of record, their option to mortgage could be entirely lost. The Defendants (except CARIBBEAN) could have taken back a mortgage themselves but elected to receive the `option to mortgage' instead. The right of these Defendants to convert a nebulous option into a secured mortgage ahead of subsequent creditors or subsequent purchasers does not accord with equity and justice.
"(F) The Court is of the opinion that the option to create a mortgage which was recorded about one year prior to the mortgage herein being foreclosed, was not a lien nor could it create a charge upon the property. The Court is of the opinion that if a mortgage was to be effective pursuant to the exercise of option to give the Defendants a mortgage, such mortgage might only become a lien dated from December 31, 1972 (provided Defendants recorded the same) and would be based upon a totally new or different consideration than that *626 which gave rise to the creation of the option initially. Since no debt has been in existence or is asserted to be in existence between the time of recording of the option agreement to the present time, the recording of the option agreement must be determined to be and it continues to be without any present vitality and without any present effect as a lien or charge against the property.
"Therefore, it is, upon consideration thereof;
"ORDERED AND ADJUDGED as follows:
* * * * * *
"2. There is due to the Plaintiff the sum of $65,000.00 as unpaid principal of the indebtedness agreed to be paid on the mortgage herein foreclosed and the note secured thereby; the sum of $10,651.25 as interest on that principal to the date of this Judgment at the rate of fifteen (15%) percent per annum from August 1, 1970, less nine (9) interest payments made; the sum of $24,349.80 as additional advances made by the Plaintiff to preserve the good standing of the prior lease and first mortgage, less two rent payments turned over to Plaintiff by Defendant, CARIBBEAN; reasonable attorneys' fees to be hereafter assessed and the costs of this action, including abstracting, filing fees, sheriff's costs, court reporter charges, Receiver's fees and all other proper charges to be hereafter taxed and assessed.
"3. The lien held by Plaintiff, JULIUS SCHURKMAN, d/b/a S & S ASSOCIATES, is superior in dignity to any right, title, interest, or claim of each and every of the Defendants named herein upon the mortgaged property herein foreclosed situated in Dade County, Florida, ...
"4. If the sums previously referred to and the additional sums to be taxed as costs and attorneys' fees be not paid to the Plaintiff from and after the date of this Judgment and all costs of this proceeding incurred subsequent to the date of this Judgment are not paid forthwith, the Clerk of this Court shall sell the aforedescribed interest of the Plaintiff and the property herein foreclosed at public sale within the legal hours of sale on the 10 day of August, 1972 (a day not less than ten nor more than thirty days after the date of this Judgment) to the highest and best bidder or bidders for cash, in the lobby of the Dade County Courthouse in the City of Miami, Florida after first having given notice as required by Florida law.
* * * * * *
"DONE AND ORDERED in Chambers at Miami, Dade County, Florida, this 13 day of July, 1972.
 "/s/ Francis X. Knuck
 "CIRCUIT JUDGE"
On appeal appellants Ruth Feemster, Thomas T. Cobb, Clyde M. Banks and Richard Kramer contend that their prior recorded "option to mortgage" is superior both in time and in right to plaintiff-appellee's mortgage. In essence we are being asked to decide whether a recorded option contract executed for valuable consideration creates rights or interest binding upon third parties. Our response is in the affirmative.
It is fundamental that a purchaser of an interest in land is chargeable with notice of liens, conveyances, contracts or judicial proceedings affecting the ownership or title thereto as disclosed by official records and such purchaser takes title subject to the above encumbrances which are reflected in the public records. See Latin-American Bank v. Rogers, 87 Fla. 147, 99 So. 546 (1924); Certain Lands In Said District v. Ideal Farms Drainage District, 156 Fla. 774, 24 So.2d 585 (1945); Tri-County Produce Distributors, Inc. v. Northeast Production Credit Association, Fla.App. 1963, 160 So.2d 46 and F.S. § 695.01, F.S.A.
*627 In the case at bar it is undisputed that defendant-appellants' option to mortgage supported by valuable consideration was recorded prior to plaintiff-appellee's mortgage. Nevertheless, appellee basically contends and the trial judge (even though first inclined to decide the other way) determined since no debt was in existence between the time of the recording of the option agreement to the time of trial, that the option agreement was without any vitality and without any effect as a lien or charge against the property. We find this determination to be erroneous.
Although there is no Florida case law specifically involving the issue of the vitality of an unexercised option to mortgage as in the instant case, Florida courts have held that an unexecuted option to renew a lease is in itself an interest in land[3] and, in addition, a lessee's unexercised option to purchase also creates a valuable interest.[4] Thus, by way of analogy, we hold that the option to create a mortgage in the case sub judice created a valid interest in and an encumbrance upon the real property and further, this option (supported by valuable consideration) having been recorded prior to plaintiff-appellee's mortgage is in equity and good conscience superior in time and right to the mortgage of appellee.
Therefore, we reverse the order of the trial court determining the option to mortgage to be without any vitality or effect upon the property and we find that appellee-mortgage took subject to the rights of appellants created by the option agreement recorded on August 28, 1969.
Defendant-appellant Caribbean Properties, Inc. as well as the remaining appellants also contend that the trial judge erred in finding that plaintiff-appellee was the agent of Caribbean and therefore the taking of the finder's fee did not make the loan usurious. We hold this determination of the trial judge to be against the manifest weight of the evidence and reverse.
A search of the record reveals the following facts with regards to this issue on whose behalf plaintiff-appellee Schurkman was acting. First, Mr. Grandwetter acted as the intermediary between appellee and Captain Burke, the president of the appellant Caribbean Properties, Inc., and also conducted most of the negotiations. Plaintiff Schurkman testified that the loan was advanced by five of his clients, some of whom had participated previously with him in similar deals. In addition, Schurkman's clients, the lenders, gave him the responsibility of approving the loan, servicing it, enforcing it and collecting the principal and interest. They further authorized him to collect the $7,500 fee and instructed him as to the amount he could charge. Plaintiff-appellee held the mortgage in his own right and instituted the instant suit against Caribbean to foreclose the mortgage.
We find the above facts as gleaned from the record conclusively demonstrate that appellee was acting as the agent of the lenders.
Having concluded that Schurkman is the agent of the lenders, we now must determine whether the loan in the case at bar is usurious. It is well established that under the usury statute one cannot be employed as an agent of the lender and at the same time make a profit for himself by exacting a bonus or commission from the borrower, if such bonus or commission, together with interest exceeds the legal limit of interest. Stoutamire v. North Florida Loan Association, 152 Fla. 321, 11 So.2d 570 (1943); Speier v. Monnah Park Block *628 Company, Fla. 1955, 84 So.2d 697. Further, when a lender clothes an agent or employee with authority to negotiate a loan on his behalf and when said agent or employee (acting in the apparent scope of his authority) exacts a bonus or commission which would make the loan usurious, there is a presumption that it is usurious; and it is incumbent upon the lender to rebut the presumption that his agent acted without the scope of his authority in making the usurious charge. Applebaum v. Laham, Fla.App. 1964, 161 So.2d 690.
In the case sub judice, appellee has failed in his burden to rebut the above presumption. In fact, he testified that the lenders ratified and agreed to the collection of the finder's fee and the amount thereof. Therefore, in our determination of whether the loan in the instant case is usurious, the finder's fee must be included.
We first note that the usurious character of a transaction is no longer determined at the inception thereof, but rather on what actually develops. Home Credit Company v. Brown, Fla. 1962, 148 So.2d 257. Further, where as in the case sub judice the agent of the lender has exacted a bonus or commission, in order to determine correctly whether a transaction is usurious, such bonus or commission must be apportioned over the period commencing with the closing date thereof and ending with either the date of the decree or the original maturity date whichever is prior in time. Green Ridge Corporation et al. v. South Jersey Mortgage Company, Fla.App. 1968, 211 So.2d 70. Applying the above guidelines to the case at bar, we computed the interest rate as follows: (1) the note on its face recited that the interest rate would be 15% per annum on the principal sum of $65,000 which amounts to $9,750 in interest for the first year; (2) we then prorated the $7,500 finder's fee over the period commencing with the date of closing (October 1970) and ending with the date of the entry of the decree (July 1972, the original maturity date being September 30, 1975), proration thereof being approximately $357.15 per month for the above 21 month period; (3) last, we added the $9,750 first year interest to the monthly apportioned finder's fee for that year, $4,285.80 (12 months x $357.15 per month) and then divided the total of the two figures $14,036.80, by the actual principal sum received by Caribbean, $57,500. On this basis, we computed the interest rate to be approximately 24% per annum and thus, the transaction is clearly usurious. Fla. Stat. § 687.03, F.S.A. Hence, plaintiff-appellee has forfeited thereby the entire interest charged and can enforce only the actual principal sum at law or in equity. Fla. Stat. § 687.04, F.S.A. In addition, appellant Caribbean, the corporate borrower, is entitled to recover all the interest received by the lender. Tel. Service Co., Inc. v. General Capital Corporation, Fla. 1969, 227 So.2d 667. In the case sub judice, the record reflects that the lender received $7,500 as his finder's fee and interest payments in the aggregate of $7,312.50 ($812.50 in interest each month for nine months).
Accordingly, we reverse that part of the trial court's order that there is due the plaintiff-appellee $65,000 as unpaid principal and $10,612.25 as interest less nine (9) interest payments and remand with directions to enter a new order that there is due plaintiff-appellee $57,500 as unpaid principal less nine (9) interest payments and the finder's fee, totaling $14,812.50.
However, we affirm that part of the trial court's order that plaintiff-appellee is entitled to the sum of $24,394.80 as additional advances made by the plaintiff to preserve the good standing of the prior lease and first mortgage, less two rent payments turned over to plaintiff-appellee by defendant-appellant Caribbean.
This second case on appeal involves the issue of receiver's fees upon which a hearing *629 was held, but no transcript taken. Later, the parties arrived at a stipulated statement on this issue and the trial court entered the following order:

 "IN THE CIRCUIT COURT OF THE
 "11TH JUDICIAL CIRCUIT IN AND
 "FOR DADE COUNTY, FLORIDA.
 "NO. 71-20727 (Knuck)
 "JULIUS SCHURKMAN, d/b/a :
 "S & S ASSOCIATES,
 "Plaintiff, :
 "ORDER ON FEES FOR RECEIVER,
 "vs. : "ATTORNEYS' FEES AND COURT
 "COSTS
 "CARIBBEAN PROPERTIES, INC., :
 "a Florida corporation, et al.
 "Defendants. :
 ___________________________________
 "THIS CAUSE came before the Court upon motion of the plaintiff to tax
 costs in the above cause in accordance with the Affidavit of Costs filed
 herein, and there being no objections thereto, costs are hereby taxed and
 assessed in the sum of Two Hundred Eighty-seven Dolars and Thirty Cents
 ($287.30) for the items set forth in the costs affidavit.
 "It is FURTHER ORDERED AND ADJUDGED that counsel for the parties
 who were present before the Court stipulated that the Court could set
 reasonable attorneys' fees for plaintiff's counsel without the necessity
 of calling expert witnesses, and the Court being advised in the premises
 and further being advised that counsel for the plaintiff was willing to
 abide by the fee schedule recommended by the Dade County Bar Association,
 it is ORDERED and ADJUDGED that reasonable fees in the sum of $8,000.00
 is hereby awarded to KOEPPEL, STARK, MARKS & NEWMARK, Attorneys for
 Plaintiff.
 "The Receiver, ROBERT V. SHEA, having applied for fees for his services
 as a receiver, and the Court having heard the receiver as to the services
 rendered by him, and being advised that approximately $27,000 of rent
 moneys were collected and disbursed in accordance with the periodic
 reports of the Receiver, the said Receiver is hereby awarded the sum of
 $14,000.00 as a reasonable fee for his services.
 "DONE and ORDERED in Chambers, at Miami, Dade County, Florida this
 3 day of August, 1972.
 "/s/ Francis X. Knuck 
 "CIRCUIT JUDGE"

All defendant-appellants joined by plaintiff-appellee contend that the $14,000 receiver's fee award was an abuse of the trial court's discretion. We disagree.
Receivers have a right to compensation for their services and expenses (including a reasonable sum for attorney's fees) and the burden is upon the receiver to show by appropriate proof through testimony, depositions, affidavits or otherwise the services and benefits which he has rendered the receivership estate and the amount of compensation to which he is *630 entitled as well as the propriety and correctness of the expenditures for which he claims reimbursement or approval. Lewis v. Gramil Corporation, Fla. 1957, 94 So.2d 174 and 27 Fla.Jur. Receivers §§ 41, 42 (1959). Among the factors to be considered are the amount of money coming into the receiver's hand, the amount and character of time and responsibility involved, the character and extent of the property committed to his care, the beneficial results of the management and various other matters incident to his position. 27 Fla. Jur. Receivers § 42 (1959) and cases cited therein.
In contrast to appellants' and appellee's contention that the receiver performed only the routine duties of the day to day management of a small office building, the record reveals the following during Mr. Shea's nine (9) months receivership.
Mr. Shea, an attorney, found it necessary to hire an additional part time secretary, he received some 400 telephone calls from the tenants, he had to make weekend visits to the office building to meet repairmen, he was confronted at one time with the threat of all tenants vacating immediately due to the faulty air-conditioning system, he drew up twenty-five (25) legal forms and/or petitions and he made many court appearances in his capacity, as attorney on behalf of the receivership. In addition, two attorneys testified that the reasonable value of Mr. Shea's services was between $12,500 and $15,000.
We find that there was substantial competent evidence in the record to sustain the amount allowed for fees to the receiver and, therefore, we conclude there was no abuse of discretion and the fee awarded was not excessive. See Frank v. Feller, Fla.App. 1966, 188 So.2d 17; Johnson v. Kruglak, Fla.App. 1971, 246 So.2d 617.
The court having determined that the loan in the case sub judice is usurious, the $8,000 award of the attorney's fees to plaintiff-appellee's attorney should be reduced to accord with the amount of the decree modified hereinabove and such fee should also eliminate therefrom any compensation for services rendered in this case in support of the attempted collection of usury on behalf of the plaintiff-appellee, lender. No indemnity for attorney's fees should be allowed to appellee for legal services rendered in attempting to enforce the usury, as distinguished from foreclosing the mortgage for the legally enforceable amount of the debt. Wilson v. Conner, 106 Fla. 6, 142 So. 606 (1932).
Further, we also must remand the $14,000 award of receiver's fees to the trial court for the assessment thereof in its discretion against either the property in receivership or the applicants for the receivership, or in the alternative to apportionate the allowance among the parties depending upon the circumstances confronting the court in the instant case. See 27 Fla.Jur. Receivers § 43 (1959).
Affirmed in part, reversed in part and remanded with directions.
NOTES
[1] The parent corporation of Caribbean.
[2] The note and mortgage to be issued by Caribbean.
[3] State Road Department v. Tampa Bay Theatres, Inc., Fla.App. 1968, 208 So.2d 485.
[4] Denco, Inc. v. Belk, Fla. 1957, 97 So.2d 261; Florida Yacht Club v. Renfroe, 67 Fla. 154, 64 So. 742 (1914); Weleh v. Gray Moss Bondholders Corporation, 128 Fla. 722, 175 So. 529 (1937).