528 So.2d 482 (1988)
EUROVEST, LTD., Appellant,
v.
Matthew J. SEGALL, Appellee.
No. 87-396.
District Court of Appeal of Florida, Third District.
July 12, 1988.
Rehearing Denied August 11, 1988.
Greenfield & DuVal and Harvie S. DuVal, North Miami, for appellant.
Horton, Perse & Ginsberg and Mallory Horton, Miami, for appellee.
Before BARKDULL, NESBITT and JORGENSON, JJ.
PER CURIAM.
Eurovest Limited appeals an order declaring its mortgage invalid. We reverse.
David Kaplan formed Eurovest Limited, a Cayman Islands corporation, in April 1972. At the time of incorporation, Kaplan was the sole stockholder. On March 1, 1972, he and his wife executed a note and mortgage in the sum of $150,000 to the corporation encumbering their residence. The mortgage deed was recorded on May 8, 1972, in the Dade County Public Records. Kaplan, joined by his wife, deeded the property to Segall on September 14, 1975, in full payment for Segall's legal representation in an unrelated matter. Subsequently, Segall filed an action to quiet title alleging that the mortgage held by Eurovest was invalid for failure of consideration. Segall alleged that the mortgage was a "scam" created by Kaplan to give the impression that the corporation had assets; and that Kaplan told him at the time the property was conveyed that the mortgage was not valid. Eurovest counterclaimed for foreclosure *483 of its mortgage. The claims were bifurcated for trial. In the first proceeding, the trial court granted Segall a judgment quieting title to the property subject to a later determination as to Eurovest's counterclaim for foreclosure of its mortgage. In a second trial, the lower court found that Segall had standing to question the validity of the mortgage and permitted him to raise, as a defense, that the mortgage was not supported by consideration. The trial court, therefore, denied Eurovest's counterclaim for foreclosure. Eurovest appeals. Its claim here is that Segall did not have standing to contest the mortgage on the affirmative defenses of a) want of consideration and b) that the mortgage constituted a fraud on creditors. We agree with Eurovest for the following reasons.
When a purchaser takes title to property without actual notice of a prior mortgage, he will be charged with constructive notice of, and will take title subject to, any duly recorded mortgage. See Feemster v. Schurkman, 291 So.2d 622 (Fla. 3d DCA 1974). See generally 59 C.J.S. Mortgages § 256 (1949) (discussion of the type and effect of notice given to subsequent purchasers by recording). Moreover, it is established that a purchaser who takes title by assuming payment of the mortgage may not assert the invalidity of that mortgage. Key West Wharf & Coal Co. v. Porter, 63 Fla. 448, 58 So. 599 (1912) (subsequent purchaser who assumed mortgage may not assert usury and failure of consideration as defenses to foreclosure action). It follows that a purchaser who takes title to property subject to a mortgage without assuming any personal liability for repayment of the underlying debt is also estopped from contesting the validity of the mortgage. See Spinney v. Winter Park Bldg. & Loan Ass'n, 120 Fla. 453, 162 So. 899 (1935) (defense of usury to mortgage foreclosure is not available to subsequent owner taking property subject to mortgage); Nesbitt v. Citicorp Sav., 514 So.2d 371 (Fla. 3d DCA 1987) (same). A subsequent purchaser may not defend against a preexisting mortgage lien on grounds which would be unavailable to him had he assumed payment of the mortgage. Spinney, 162 So. at 903. Accordingly, Segall, as subsequent purchaser, is estopped from protesting Eurovest's foreclosure action based on his claim that Kaplan did not receive consideration for the mortgage.
Because a subsequent purchaser taking title to property which is subject to a mortgage does not assume any personal liability to satisfy the mortgage, see Alabama Florida Co. v. Mays, 111 Fla. 100, 149 So. 61 (1933), it follows that Segall would not be personally liable for the debt evidenced by the note and mortgage. Consequently, he would not be subject to a deficiency judgment in the event the amount received from a forced sale of the property is insufficient to satisfy the debt. Segall does, however, retain all legal and equitable remedies available to subsequent owners. The inability of a subsequent purchaser to contest the validity of a mortgage does not affect his equitable right of redemption nor his right to participate in excess proceeds of the sale following any foreclosure proceeding. See Rosen v. Dorn-Kothe, Inc., 126 Fla. 717, 171 So. 646 (1936); Engels v. Valdesuso, 497 So.2d 698 (Fla. 3d DCA 1986); see also Robbins v. Blanc, 105 Fla. 625, 142 So. 223 (1932). Thus, appellee is not without remedy.
We next address Segall's claim that the mortgage was a "scam". Apparently the claim is a veiled attempt to set aside the mortgage as a fraudulent conveyance. "To constitute a fraudulent conveyance there must be a creditor to be defrauded, a debtor intending fraud, and a conveyance of property which is applicable by law to the payment of the debt due." Bay View Estates Corp. v. Southerland, 114 Fla. 635, 154 So. 894, 900 (1934); Bank of Montreal v. Malinski, 498 So.2d 440 (Fla. 3d DCA 1986); Steele v. Lannon, 355 So.2d 190 (Fla. 2d DCA 1978). It is immaterial whether the actual fraudulent intent related to existing creditors or was directed exclusively against subsequent creditors. Beasley v. Coggins, 48 Fla. 215, 37 So. 213 (1904); Malinski; 13 Fla.Jur.2d Creditors' Rights and Remedies § 253 (1979). However, where the creditor is not in existence *484 at the time of the conveyance, there must be evidence establishing actual fraudulent intent by one who seeks to have the transaction set aside. Beasley, 37 So. at 215; 37 Am.Jur.2d Fraudulent Conveyances § 67 (1968).
On this record, we conclude that the evidence does not support a finding that the conveyance was fraudulent. Kaplan conveyed the mortgage on the residence owned by him and his wife for the purpose of capitalizing Eurovest. The mortgage constituted Kaplan's initial investment from which he claims to have reaped a benefit. There is no evidence to suggest that Kaplan intended to defraud his creditors. Further, at the time he conveyed the property to Segall, he advised him of the existence of the mortgage and that the purpose of the transaction was to establish financial credibility for the corporation. Segall cannot claim that he was deceived. Consequently, no claim for fraudulent conveyance will lie.
For the foregoing reasons, the order denying Eurovest's counterclaim for foreclosure of its mortgage is reversed.